[This opinion has been published in *Ohio Official Reports* at 69 Ohio St.3d 202.]

THE STATE, EX REL. BAKER MATERIAL HANDLING CORPORATION, APPELLANT
AND CROSS-APPELLEE, *v.* INDUSTRIAL COMMISSION OF OHIO; METZEL,
APPELLEE AND CROSS-APPELLANT.

**[Cite as *State ex rel. Baker Material Handling Corp. v. Indus. Comm.*,
1994-Ohio-437.]**

*Workers' compensation—Self-insured employer who, subsequent to the initial
allowance of a claim, certifies a medical condition as allowed on a C-174
form has conclusively granted that additional condition as part of the
claim—Employee who retires prior to becoming permanently and totally
disabled is precluded from eligibility for permanent total disability
compensation, when—Employee who retires subsequent to becoming
permanently and totally disabled is not precluded from eligibility for
permanent total disability compensation regardless of the nature or extent
of the retirement.*

1. A self-insured employer who, subsequent to the initial allowance of a workers'
   compensation claim, certifies a medical condition as allowed on a "Self
   Insured Semi-Annual Report of Claim Payments" (form C-174) has
   conclusively granted that additional condition as part of the claim.

2. An employee who retires prior to becoming permanently and totally disabled is
   precluded from eligibility for permanent total disability compensation only
   if the retirement is voluntary and constitutes an abandonment of the entire
   job market. (*State ex rel. CPC Group, Gen. Motors Corp. v. Indus. Comm.*
   [1990], 53 Ohio St.3d 209, 559 N.E.2d 1330, followed and applied; *State
   ex rel. Chrysler Corp. v. Indus. Comm.* [1991], 62 Ohio St.3d 193, 580
   N.E.2d 1082, and *State ex rel. Consolidation Coal Co. v. Yance* [1992], 63
   Ohio St.3d 460, 588 N.E.2d 845, modified.)

3. An employee who retires subsequent to becoming permanently and totally disabled is not precluded from eligibility for permanent total disability compensation regardless of the nature or extent of the retirement. (*State ex rel. Brown v. Indus. Comm.* [1993], 68 Ohio St.3d 45, 623 N.E.2d 55, followed; *State ex rel. Chrysler Corp. v. Indus. Comm.* [1991], 62 Ohio St.3d 193, 580 N.E.2d 1082, and *State ex rel. Consolidation Coal Co. v. Yance* [1992], 63 Ohio St.3d 460, 588 N.E.2d 845, distinguished.)

(No. 93-5—Submitted January 5, 1994—Decided May 4, 1994.)

APPEAL and CROSS-APPEAL from the Court of Appeals for Franklin County, No. 91AP-1164.

—————————

{¶ 1} On February 24, 1983, claimant-appellee and cross-appellant, Earl Metzel, Jr., sustained an injury in the course of and arising out of his employment with appellant and cross-appellee, Baker Material Handling Corporation ("Baker"). Claimant filed an application for payment of compensation and medical benefits with the Industrial Commission of Ohio ("commission"). By letter dated March 14, 1983, Baker, a self-insured employer, recognized the claim for "lumbo sacral sprain." Thereafter, Baker began making temporary total dis- ability ("TTD") compensation payments to claimant. On August 6, 1986, Baker filed a motion with the commission to determine the extent of claimant's disability. On April 20, 1987, a district hearing officer found that "this claim has been previously allowed for: Lumbosacral strain" and that "claimant's condition has become permanent *** [and, therefore,] that temporary total compensation payments are not authorized beyond the date of hearing, 4/20/87." On May 29, 1987, claimant filed an application for permanent total disability ("PTD") compensation.

{¶ 2} Between February 24, 1983, when claimant was injured, and May 29, 1987, when claimant filed for PTD compensation, Baker had submitted eleven C-174 forms, entitled "SELF INSURED SEMI-ANNUAL REPORT OF CLAIM

2

PAYMENTS," to the Ohio Bureau of Workers' Compensation. Each form C-174 sought a certification from the self-insured employer as to the type and amount of compensation and medical expenses paid on the claim over the preceeding six-month period and what the claim was allowed for. On three of these reports, respectively for the six-month reporting periods ending December 1, 1985, October 11, 1986 and December 31, 1986, Baker certified that "claim allowed for: * * * herniated disc."

{¶ 3} On February 8, 1990, claimant took an early retirement under his group pension plan.

{¶ 4} By letter dated August 8, 1990, Baker's representative, Industrial Advisors Bureau, Inc., advised claimant's attorney as follows:

"This is to acknowledge receipt of your requests for authorization from Dr. Koussandianos, which I have denied since the diagnosis included conditions not allowed in this claim. Please be advised that this claim has never formally been allowed for herniated disc. I note that Chris, from your office, sent me a C-174 signed by Anne Grattner giving herniated disc as part of the allowed conditions, however, if you review the orders in your file, you will find that the claim was only formally allowed for lumbosacral sprain. If you wish to have herniated disc as an allowed condition in this claim, please file a motion asking for a formal hearing."

{¶ 5} Accordingly, on December 4, 1990, claimant filed a motion with the commission to amend the claim to include "lumbosacral sprain, herniated disc superimposed on early degenerative spondyloarthritis."

{¶ 6} Before claimant's December 4, 1990 motion for additional allowance was heard, however, a hearing was held on his application for PTD compensation. On March 19, 1991, the commission entered an order finding that "the claimant is permanently and totally disabled [and] that compensation for such disability be awarded from 05/21/87." In granting claimant's application for PTD compensation,

the commission stated "[t]hat the employer did recognized [sic] claim for herniated disc by completing the [C-174] claim forms."

{¶ 7} On June 21, 1991, Baker filed a "Request for Rehearing" with the commission on the basis that the claim had never been allowed for herniated disc and that claimant had voluntarily removed himself from the labor market. On July 31, 1991, the commission construed Baker's request as a "Request for Reconsideration" and denied it.

{¶ 8} On October 11, 1991, Baker filed a complaint for writ of mandamus in the Court of Appeals for Franklin County. The court of appeals found that since Baker had "listed the additional condition of herniated disc on at least three C-174 forms * * * [it] has recognized the allowed condition of herniated disc. Therefore * * * the commission did not abuse its discretion in finding [claimant] to be permanently and totally disabled." The court further found, however, that based on this court's decision in *State ex rel. Chrysler Corp. v. Indus. Comm.* (1991), 62 Ohio St.3d 193, 580 N.E.2d 1082, the commission must make a determination of whether claimant's retirement was voluntary. Accordingly, the court of appeals decided "that a writ of mandamus issue against respondent Industrial Commission of Ohio ordering it to conduct further proceedings to determine the issue of whether relator's retirement was voluntary."

{¶ 9} This cause is now before this court upon an appeal and cross-appeal as of right.

_____

*David R. Cook*, for appellant and cross-appellee, Baker Material Handling Corporation.

*Stewart Jaffy & Assoc. Co., L.P.A*, *Stewart R. Jaffy* and *Mark J. Jaffy*; *Frank L. Gallucci, Jr., Co., L.P.A.*, and *Frank Gallucci*, for appellee and cross-appellant, Earl Metzel, Jr.

_____

4

**ALICE ROBIE RESNICK, J.**

{¶ 10} This case presents two important workers' compensation issues. The first issue is whether a self-insured employer who, subsequent to the initial allowance of a claim, certifies a medical condition as allowed on a C-174 form has conclusively granted that additional condition as part of the claim. The second issue involves the effect of post-PTD retirement upon a claimant's eligiblity for PTD compensation.

I

Allowance of Additional Condition by Self-Insured Employer

{¶ 11} In Ohio, employers are required to make semiannual premium payments to the State Insurance Fund for the purpose of establishing coverage for their employees who suffer work-related injuries. R.C. 4123.35(A). Certain qualifying employers, however, may "be granted the privilege to pay individually compensation, and furnish medical, surgical, nursing and hospital services and attention and funeral expenses directly to injured employees or the dependents of killed employees." R.C. 4123.35(B). These self-insured employers pay "no premium to the State Insurance Fund." Fulton, Ohio Workers' Compensation Law (1991) 306, Section 14.10.

{¶ 12} State-fund employers and self-insured employers stand on different footing with regard to the processing and adjudication of workers' compensation claims. State-fund employers simply make "premium payments to the fund. Self-insurers, on the other hand, are the initial processing agents of claims brought by their employees. The commission or bureau becomes involved only if the self-insurer denies a claim and the employee appeals." *Wargetz v. Villa Sancta Anna Home for the Aged* (1984), 11 Ohio St.3d 15, 17, 11 OBR 49, 51, 462 N.E.2d 1215, 1217. Thus, "[a] self-insuring employer not only pays compensation directly to his injured employees but also adjudicates their claims for benefits in the absence of a dispute." Young, Workmen's Compensation Law of Ohio (2 Ed. 1971) 239,

Section 13.11.  In addition, former Ohio Adm. Code 4121-9-01(C) (now 4123-19-01[C]) provided in pertinent part that:

"A self-insured employer *may, without any prior order from the commission, grant* or refuse to grant *any* claim made under the Ohio Workers' Compensation Act."  (Emphasis added.)

{¶ 13} In *State ex rel. Saunders v. Metal Container Corp.* (1990), 52 Ohio St.3d 85, 556 N.E.2d 168, this court held that the commission did not have continuing jurisdiction to correct its previous mistake regarding the medical condition allowed in a claim to the extent of changing the nature of the medical condition as certified by the self-insurer on a "C-50 application for payment of compensation and medical benefits."  The court of appeals in that case, *State ex rel. Saunders v. Metal Container Corp.* (Nov. 29, 1988), Franklin App. No. 87AP-509, unreported, at 6, 1988 WL 129162, explained as follows:

"[When] * * * the employer is self-insured[,] [t]he initial determination of allowed conditions necessarily is made by the employer in such a situation.  The district hearing officer cannot modify that finding over the objection of the claimant, upon the assumption that the self-insured employer erroneously certified the condition.  The district hearing officer had no jurisdiction under R.C. 4123.52, or otherwise, to modify the original finding of the employer as to the allowed condition over the objection of the claimant.  The employer who made the determination and certified the claim cannot now complain, as it attempted to do before the district hearing officer in March 1986 that it, the employer, had made an erroneous determination and certification as to the allowed condition."

{¶ 14} Based on similar reasoning, at least two appellate courts have held that a self-insured employer makes a conclusive determination to amend a claim by virtue of certifying an additional condition as "allowed" on the C-174 form. *Garrett v. Jeep Corp.* (1991), 77 Ohio App. 3d 402, 602 N.E.2d 691; *State ex rel.*

*Jones v. Indus. Comm.* (Oct. 20, 1983), Franklin App. No. 83AP-256, unreported, 1983 WL 3734

{¶ 15} Baker proposes that the C-174 form be limited to its purpose which, Baker contends, "is to advise the Industrial Commission of the type of compensation being paid to a claimant, not to provide a record of the claimant's allowed conditions * * *." In support, Baker relies on this court's decision in *State ex rel. Riggs v. Oak Lake Farms, Inc.* (1986), 26 Ohio St.3d 173, 26 OBR 149, 497 N.E.2d 720. In Riggs, the claimant's treating physician had submitted a medical report in which he opined that the claimant was permanently and totally disabled. The commission argued that this report was "unreliable because, both prior and subsequent to the date of his report, [the doctor] submitted to the Bureau of Workers' Compensation 'C-19' billing forms on which he (or someone in his employ) had checked boxes indicating that the [claimant's] disability was 'temporary total' rather than 'permanent total.' *Id.* at 176, 26 OBR at 151, 497 N.E.2d at 722. In rejecting the commission's argument, we stated in part that "the 'C-19' form is designated as a 'fee bill.' Its purpose is to allow the treating physician to be reimbursed for services rendered—not to provide a medical record of the claimant's condition or history, or to state an *opinion* of the claimant's level of disablity." (Emphasis *sic.*) *Id.*

{¶ 16} The reasons for limiting a C-19 form to its purpose under the circumstances in *Riggs* do not apply in this case. In the case of the C-19 fee bill, the physician's office often simply reports "the claimant's legal status (in terms of disability) according to the determination of the bureau." *Id.* This is in fact the accurate way for the physician to fill out the C-19 form because the claimant's legal status is the "last legally recognized disability." *Id.* at 176, 26 OBR at 151, 497 N.E.2d at 722-723. The self-insured employer, on the other hand, is the initial processor of claims. As such, it does not simply report the legal status of the claim "according to the determination of the bureau," but itself initially determines such

status. In fact, in this case it was *Baker*, not the commission, which had determined claimant's "last legally recognized" medical condition when, by a letter dated March 14, 1983, it recognized the claim for "lumbo sacral sprain." Clearly, when a self-insured employer certifies an additional condition as allowed in the claim, it is not acting in accordance with any perception (or actual limitation) that it is bound to report the claimant's last legally recognized status. If this were its perception, it certainly would not certify an *additional* allowance.

{¶ 17} Baker also argues that its reporting of "herniated disc" was a clerical error, and that if the commission has authority to change and modify its prior orders, then self-insured employers, who are also "obligated to initially adjudicate claims, *** have the inherent authority to correct clerical errors." The continuing jurisdiction of the commission to modify or change former findings or orders emanates from R.C. 4123.52 and its predecessor, G.C. 1465-86. In balancing the commission's continuing jurisdiction under R.C. 4123.52 and the need for finality of a determination, this court has construed R.C. 4123.52 as authorizing such a modification upon a showing of (1) new and changed conditions subsequent to the initial order, (2) fraud, or (3) clerical error. See *State ex rel. Gordon v. Indus. Comm.* (1992), 63 Ohio St.3d 459, 471, 588 N.E.2d 852, 854; *State ex rel. Keith v. Indus Comm.* (1991), 62 Ohio St.3d 139, 141, 580 N.E.2d 433, 436. We have also held that, "[a]ssuming *arguendo* that one of the preliminary conditions for continuing jurisdiction exists, the commission abuses its discretion when it fails to exercise its continuing jurisdiction within a reasonable time. * * * Reasonableness depends on the circumstances of each case. In this instance, the approximately four years that elapsed between the district hearing officer's 1984 overpayment calculation and the bureau's 1988 motion to vacate is not reasonable." (Citation omitted.) *Gordon*, *supra*, at 472, 588 N.E.2d at 855.

{¶ 18} By its terms, R.C. 4123.52 applies to "[t]he jurisdiction of the industrial commission." There is no comparable statute or rule which applies to

self-insured employers. The self-insurer's jurisdiction is limited to determining "the *first* level of a claim." (Emphasis added.) Former Ohio Adm.Code 4121-9-01(C) (presently Ohio Adm. Code 4123-19-01[C]). In order for a self-insured employer to secure a modification of its prior award, it must invoke the continuing jurisdiction of the commission upon a showing of one of the three circumstances set forth above. In this case, even if we were to construe Baker's letter of August 8, 1990 as an attempt to invoke the commission's jurisdiction, the approximately five years that elapsed between its 1985 reporting of "herniated disc" as allowed and its 1990 letter denying the allowance of such condition is not reasonable. Further, Baker's 1990 letter did not purport to allege that a clerical error had been made five years earlier, but merely stated that the claim was never "formally *** allowed for herniated disc."

{¶ 19} Baker further argues that *State ex rel. Williams v Indus. Comm.* (1984), 11 Ohio St.3d 240, 11 OBR 553, 465 N.E.2d 80, applies to preclude "implicit" recognition of a claim. As the court of appeals aptly explained in *Garrett*, *supra*, at 414, 602 N.E.2d at 699:

"* * * *Williams* is clearly distinguishable in that it involved: (1) *implicit* recognition, as opposed to *explicit* recognition; and (2) 'recognition' by the commission, not the employer, whose procedures require, at a minimum, a tentative order and notice to the employer to object, whereas this case involves a factual determination by the employer to allow the condition pursuant to procedures that permit a self-insured employer to grant any claim without prior order from the commission."[1] (Emphasis *sic.*)

---

1. We note that the case *sub judice* presents only the issue of explicit recognition of an additional allowance by a self-insured employer who reports such condition as allowed on a C-174 form. This case does not involve the separate issue of whether, in the absence of reporting the condition as allowed, the self-insured employer implicitly recognizes a claim or condition as compensable by payment of medical expenses and/or compensation. See *Garrett*, *surpa*, at 412-414, 602 N.E.2d at 698-699.

{¶ 20} Lastly, Baker argues that since no appeal was taken by the claimant from the April 20, 1987 District Hearing Officer's order, which "specifically indicated that the claim had been recognized only for the condition of lumbosacral sprain," the claimant cannot now rely on the prior C-174s. The April 20, 1987 order, and the employer's motion of August 6, 1986 requesting this hearing, did not purport to reexamine the allowance of "herniated disc." The sole issue raised and decided therein involved the extent of claimant's disability. Certainly, if the commission abuses its discretion by changing the nature of the condition as certified by the self-insured employer when it purports to correct its previous error, it would also constitute an abuse of discretion for the commission to actually rely on that previous error to change the nature of the condition as certified by the self-insured employer. *State ex rel. Saunders*, *supra*.

{¶ 21} We hold that a self-insured employer who, subsequent to the initial allowance of a claim, certifies a medical condition as allowed on a "Self Insured Semi-Annual Report of Claim Payments" (form C-174) has conclusively granted that additional condition as part of the claim.

II

Post-PTD Retirement

{¶ 22} Claimant filed his application for PTD compensation on May 29, 1987. Almost three years later, claimant took an early retirement under his group pension plan. Over a year after claimant's retirement, the commission finally addressed his application for PTD compensation and found that he had been permanently and totally disabled when he filed for compensation four years earlier. The commission, however, failed to state whether it considered claimant's retirement to be voluntary or injury-induced.

{¶ 23} The issue presented is whether it is necessary for the commission to consider the nature of claimant's retirement under these circumstances. In particular, we must determine whether a claimant's retirement, taken subsequent to

the time he becomes permanently and totally disabled, can affect his eligibility for PTD compensation.

{¶ 24} In *Chrysler Corp.*, *supra*, and again in *State ex rel. Consolidation Coal Co. v. Yance* (1992), 63 Ohio St.3d 460, 588 N.E.2d 845, we determined that a claimant's voluntary retirement would operate to preclude eligibility for PTD compensation in the same way that we had previously determined it to operate in precluding eligibility for TTD compensation. We explained in *Chrysler*, as follows:

"We have not previously addressed the effect of retirement upon a claimant's eligibility for permanent total disability compensation, having limited earlier discussions to a retired claimant's eligibility for impaired earning capacity or temporary total disability compensation. Upon review, we find that the principles espoused with regard to the latter are equally applicable here.

"'Temporary total disability' is the inability to return to the former position of employment due to industrial injury. *State, ex rel. Ramirez v. Indus. Comm.* (1982), 69 Ohio St.2d 630, 23 O.O.3d 518, 433 N.E.2d 586, syllabus. A claimant who retires for reasons unrelated to his or her injury cannot receive temporary total disability compensation since it is the claimant's own action, not the industrial injury, that prevents a return to the former position of employment. *State, ex rel. Rockwell Internatl. v. Indus. Comm.* (1988), 40 Ohio St.3d 44, 531 N.E.2d 678.

"'Permanent total disability,' on the other hand, is the state of being unfit for sustained remunerative employment due to industrial injury. *State ex rel. Jennings v. Indus. Comm.* (1982), 1 Ohio St.3d 101, 1 OBR 135, 438 N.E.2d 420. 'Sustained remunerative employment' necessarily encompasses 'former position of employment.' It would therefore be inconsistent to state that retirement would not prevent an award of permanent total disability benefits but would preclude temporary total disability compensation, particularly when the criterion for temporary total disability is much less demanding than that of permanent total

disability. Accordingly, the principles set forth in *Rockwell* control." *Id.*, 62 Ohio St.3d at 195-196, 580 N.E.2d at 1084-1085.

{¶ 25} Although the facts of *Chrysler Corp.* and *Yance* were limited to the situation where the claimant retires before applying for PTD compensation, our decisions in those cases were clearly not so limited. In attempting to apply *Chrysler Corp.* and *Yance* to the facts of this case, however, we find ourselves questioning the very premise on which our decisions were based. In choosing to adopt for PTD cases the rule that we established for a retired claimant's eligibility for TTD compensation, rather than for impairment of earning capacity, we completely ignored that "[i]t is also basic law that the purpose of permanent and total disability benefits is to compensate injured persons for impairment of earning capacity." *State ex rel. Stephenson v. Indus. Comm.* (1987), 31 Ohio St.3d 167, 170, 31 OBR 369, 372, 509 N.E.2d 946, 949; *State ex rel. Ramirez, supra*, at 634, 23 O.O.3d at 520, 433 N.E.2d at 589; *State ex rel. Bunch v. Indus. Comm.* (1980), 62 Ohio St.2d 423, 427, 16 O.O.3d 449, 451, 406 N.E.2d 815, 818; *State ex rel. Gen. Motors Corp. v. Indus. Comm.* (1975), 42 Ohio St.2d 278, 282, 71 O.O.2d 255, 257, 328 N.E.2d 387, 389.

{¶ 26} Further, as will now be seen, it is precisely *because* "'[p]ermanent total disability,' on the other hand, is the state of being unfit for sustained remunerative employment due to industrial injury," that a *different* rule is required for PTD cases than for TTD cases.

{¶ 27} R.C. 4123.54 provides, in pertinent part, that "[e]very employee, who is injured *** is entitled to receive *** the compensation for loss sustained on account of the injury *** as [is] provided by this chapter." Including our decisions in *Chrysler Corp.* and *Yance*, there are three categories of compensable disability provided in R.C. Chapter 4123 to which we have applied the voluntary retirement rule: (1) TTD (R.C. 4123.56), (2) impairment of earning capacity under former R.C. 4123.57(A) (partial disability), and (3) PTD (R.C. 4123.58). Prior to

12

*Chrysler Corp.*, however, this court's decisions regarding the first two classifications of disability reflected a recognition that, since each category of compensable disability is *sui generis*, the effect of retirement upon a claimant's eligibility for each type of disability compensation is determined independently pursuant to the nature and purpose of the disability compensation sought. The rule that voluntary retirement will, but injury-induced retirement will not, preclude a claimant's eligibility for TTD compensation was initially developed in a trilogy of cases. In *State ex rel. Jones & Laughlin Steel Corp. v. Indus. Comm.* (1985), 29 Ohio App.3d 145, 146, 29 OBR 162, 163, 504 N.E.2d 451, 453, the court of appeals noted that in *Ramirez*, *supra*, at the syllabus, we had defined "TTD" "'as a disability which *prevents* a worker from returning to his former position of employment.'" (Emphasis *sic*.) Relying on this definition, the court reasoned that "where the employee has taken action that would preclude his returning to his former position of employment, even if he were able to do so, he is not entitled to continued temporary total disability benefits since it is his own action, rather than the industrial injury, which prevents his returning to his former position of employment." *Id.* at 147, 29 OBR at 164, 504 N.E.2d at 454.

{¶ 28} In *State ex rel. Ashcraft v. Indus. Comm.* (1987), 34 Ohio St.3d 42, 44, 517 N.E.2d 533, 535, a case involving a claimant's incarceration, we adopted the rationale of *Jones & Laughlin* and explained that it "is a reflection of the underlying purpose of temporary total compensation: to compensate an injured employee for the loss of earnings which he incurs while the injury heals."

{¶ 29} In *Rockwell*, *supra*, we adopted the rationale of *Ashcraft* and *Jones & Laughlin*, but limited it to the situation involving voluntary retirement. We held "that where a claimant's retirement is causally related to his injury, the retirement is not 'voluntary' so as to preclude eligibility for temporary total disability compensation." *Id.* at syllabus. We explained that "[t]his broader focus takes into consideration a claimant's physical condition. It recognizes the inevitability that

some claimants will never be medically able to return to their former positions of employment, and thus dispenses with the necessity of a claimant's remaining on the company roster in order to maintain temporary total benefit eligibility." *Id.*, 40 Ohio St.3d at 46, 531 N.E.2d at 680.

{¶ 30} In *State ex rel. CPC Group, Gen. Motors Corp. v. Indus. Comm.* (1990), 53 Ohio St.3d 209, 559 N.E.2d 1330, our attention turned to the effect of retirement upon a claimant's eligibility for partial disability compensation under former R.C. 4123.57(A). We explained that retirement will affect a claimant's eligibility for this type of compensation differently than it affects his eligibility for TTD compensation, because the underlying nature and purpose of the compensation is different. Whereas TTD compensation is meant to compensate for the loss of earnings while the injury heals, the allowance for partial disability under former R.C. 4123.57(A) is based on impairment of earning capacity. *Id.* at 211, 559 N.E.2d at 1332. See, also, *State ex rel. Rubin v. Indus. Comm.* (1938), 134 Ohio St. 12, 16, 11 O.O. 382, 383, 15 N.E.2d 541, 542. Thus, a claimant's voluntary retirement from his former position of employment will not automatically preclude partial disability compensation under former R.C. 4123.57(A). Rather, a claimant is precluded from receiving this type of compensation only if by retiring he has abandoned the entire job market. *CPC Group*, *supra*, 53 Ohio St.3d at 210, 559 N.E.2d at 1331. We did not, however, accept the claimant's "assertion that retirement is never relevant to a determination of impaired earning capacity." *Id.* at 211, 559 N.E.2d at 1333. Instead, we explained that "R.C. 4123.57(A) requires a comparison of claimant's pre-and post-injury earning capacity. Consideration of post-injury earning capacity assumes, at a minimum, a desire to earn during the period in which an impairment has been alleged." *Id.*

{¶ 31} As the foregoing demonstrates, prior to *Chrysler Corp.*, *supra*, our decisions regarding retirement-precluded disability compensation were carefully tailored to reflect the underlying purpose of the type of disability compensation

sought. Since the purpose of each particular statutory type of compensation is different, "there is good reason to have differing results when dealing with a particular disability." *Bunch*, *supra*, 62 Ohio St.2d at 427, 16 O.O.3d at 451, 406 N.E.2d at 818.

{¶ 32} PTD compensation has an entirely different purpose than TTD compensation. PTD compensation presupposes that there is no prospect that the claimant will ever return to his former position or any other employment. *Stephenson*, *supra*, 31 Ohio St.3d at 170, 31 OBR at 372, 509 N.E.2d at 949-950. PTD compensation, therefore, is not meant to replace wages lost during the period of recovery, but presumes that the claimant will not recover. Accordingly, this type of compensation is based on the concept of estimating probable future loss due to injury (impairment of earning capacity) and requires a preliminary consideration of non-medical factors such as age, education, and work experience, which have no place in a determination of TTD. *Id.* at 173, 31 OBR at 374, 509 N.E.2d at 951; 1C Larson, Law of Workmen's Compensation (1992) 10-129, Section 57.21(b); *State ex rel. W. Elec. Co. v. Coyer* (1990), 53 Ohio St.3d 129, 130, 559 N.E.2d 738, 740.

{¶ 33} PTD compensation also has a different purpose than partial disability compensation under former R.C. 4123.57(A). Although both are designed to compensate for impairment of earning capacity, R.C. 4123.58, unlike former R.C. 4123.57(A), does not require a comparison of claimant's earning capacity before and after his injury. A worker who is permanently and totally disabled has no earning capacity and is entitled to "receive an award to continue until his death." R.C. 4123.58(A).

{¶ 34} In TTD and partial disability cases, voluntary retirement is viewed as breaking the nexus between the claimant's injury and his unemployment. Where the claimant has taken action that prevents him from returning to his former position of employment in the TTD case, or has taken action that prevents a return to the job

market in the partial disability case, it is his own action, not the industrial injury, that causes his loss. These claimants, however, retain the physical capabilities despite their injuries to engage in some sort of prospective employment which can be foreclosed by voluntary retirement.

{¶ 35} On the other hand, the permanently and totally disabled claimant is forever unfit for sustained remunerative employment. It would be a useless and vain requirement to force such a claimant to remain technically active for employment in which he is not fit to engage. Under such a requirement, a claimant would "be penalized for failing to seek employment which he could not reasonably be expected to perform." *Employers Mut. Liab. Ins. Co. of Wisconsin v. Indus. Comm.* (1975), 25 Ariz.App. 117, 120, 541 P.2d 580, 583.

{¶ 36} Further, in providing for "an award to continue until his death," R.C. 4123.58 contemplates that PTD compensation will continue despite a claimant's post-PTD retirement. See *Bailey v. Litwin Corp.* (Alaska 1989), 780 P.2d 1007; *Hilyard Drilling Co., Inc. v. Janes* (Ala.Civ.App. 1985), 462 So.2d 942; *Skrukrud v. Gallatin Laundry Co., Inc.* (1976), 171 Mont. 217, 557 P.2d 278; *Krugen v. Beall Pipe & Tank Corp.* (1974), 19 Ore.App. 922, 529 P.2d 962; *Inland Steel Co. v. Terry* (Ky.App. 1970), 464 S.W. 2d 284, 285. See, also, *Pacific Motor Trucking Co. v. Standley* (1988), 93 Ore.App. 204, 761 P.2d 930. Professor Larson explains that:

"One final caution must be entered in applying the concept of estimating probable future loss due to injury. If permanent disability or death benefits become payable, they are not limited to the period of what would have been claimant's active working life. In other words, if a man becomes totally permanently disabled at age twenty-five, and is awarded benefits for life, they obviously do not stop when he is sixty-five, but extend on into the period of what probably would have been retirement. This being so, if a man is permanently and totally disabled at age sixty, it is not correct to say that his benefits should be based on the theory that his

probable future loss of earnings was only five years of earnings. The right to have compensation benefits continue into retirement years is built into the very idea of workmen's compensation as a self-sufficient social insurance mechanism." 2 Larson, Law of Workmen's Compensation, *supra*, 10-712, Section 60.21(f).

{¶ 37} Once a claimant becomes permanently and totally disabled, he is entitled to receive PTD compensation from that time forward until his death. The advent of retirement, regardless of how imminent at the time of disability, will not extinguish or limit the claimant's right to PTD compensation. If an otherwise compensable injury or disease has rendered the claimant unfit for sustained remunerative employment, "what he actually intended to do with his time in the future is immaterial, and the acceptance of retirement benefits is irrelevant." *Inland Steel Co.*, *supra*, 464 S.W.2d at 285.

{¶ 38} This court has recently recognized the foregoing principles espoused with regard to post-PTD abandonment of the work force in the context of a claimant's incarceration in a penal institution. In *State ex rel. Brown v. Indus. Comm.* (1993), 68 Ohio St.3d 45, 623 N.E.2d 55, claimant was incarcerated after becoming permanently and totally disabled and the commission ordered his PTD compensation suspended. We found that the commission suspended claimant's compensation contrary to law. In so finding, we set out the underlying distinctions between TTD compensation and PTD compensation, and concluded that *Ashcraft*, *supra*, and *Chrysler Corp.*, *supra*, were distinguishable. We explained in part as follows:

"In *Ashcraft*, *supra*, we basically concluded that the claimant's temporary total disability compensation could be denied or terminated because the claimant's choice to engage in criminal activity was comparable to the claimant's voluntary abandonment of his former position of employment. However, it is clear that such a situation did not, nor could it possibly, exist here.

"The commission goes astray in this case by focusing on relator's incarceration rather than the relator's disability. Clearly, once a worker has been declared permanently and totally disabled he or she is incapable of returning to work. As such, a claimant who has a permanent and total disability is incapable of abandoning a position because that position, in effect, does not exist. Indeed, a claimant can abandon a former position or remove himself or herself from the work force only if he or she has the physical capacity for employment at the time of the abandonment or removal."

"Additionally, it is important to discern that R.C. 4123.58 (permanent total disability) involves earning capacity. The fact that relator was imprisoned did not change his capacity to work. Further, R.C. 4123.58, unlike R.C. 4123.56 (temporary total disability), does not discuss specific instances when workers' compensation may be terminated. This is because R.C. 4123.58 mandates that permanent total compensation continue until the employee's death. Accordingly, we believe the commission's reliance on *Ashcraft* is misplaced.

"* * *

"A critical distinction exits between *Chrysler* and the case before this court. *Chrysler* concerned a claimant's total disability which did not arise until *after* he had retired from his former position of employment. Here, we are confronted with a claimant who has been declared permanently disabled *prior* to his incarceration. Hence, it would be incorrect to maintain that the claimant's request for permanent total disability benefits in *Chrysler*, which were sought *after* the claimant voluntarily retired, can be equated with the relator's benefits, which were awarded *prior* to his imprisonment but then alter suspended. Thus, *Chrysler*, being factually inapposite to this case, does not apply.

"On September 7, 1982, the commission awarded relator permanent total disability compensation. A finding by the commission that a claimant is permanently and totally disabled is a finding that the claimant is permanently

removed from the work force by the reason of his or her injury. In a situation where it has been determined that a claimant is entitled to permanent total disability compensation, it is of no consequence that a subsequent event may arise, such as the claimant's incarceration, which may further impair his or her ability to work, because the subsequent event does not negate the causal relationship between the work-related injury suffered by the claimant and his or her absence from the work force. In other words, when a claimant has been determined to be permanently and totally disabled, it is not the subsequent incarceration which prevents the claimant's return to sustained remunerative employment, it is the disability itself." (Emphasis *sic.*) *State ex rel. Brown*, *supra*, 68 Ohio St.3d at 48-49, 623 N.E.2d at 58.

{¶ 39} We hold that the effect of retirement upon an employee's eligibility for PTD compensation depends on whether the retirement is taken prior or subsequent to when the employee becomes permanently and totally disabled. Where an employee retires prior to becoming permanently and totally disabled, such employee is precluded from eligibility for PTD compensation only when the retirement is voluntary and constitutes an abandonment of the entire job market. (*CPC*, *supra*, followed and applied; *Chrysler Corp.*, *supra*, and *Yance, supra*, modified.) Where an employee retires subsequent to becoming permanently and totally disabled, such employee is not precluded from eligibility for PTD compensation regardless of the nature or extent of the retirement. (*Brown*, *supra*, followed; *Chrysler Corp.*, *supra*, and *Yance*, *supra*, distinguished.)

{¶ 40} In the present case, claimant filed his application for PTD compensation on May 29, 1987. Four years later, the commission finally determined that claimant was permanently and totally disabled and that he had been such since May 21, 1987. That finding is not challenged by Baker. Claimant's retirement, therefore, was taken between two or three years subsequent to his becoming permanently and totally disabled and cannot affect his eligibility for PTD

compensation.  Thus, any failure by the commission to have considered the nature of claimant's retirement is not error.

{¶ 41} In light of the foregoing, the judgment of the court of appeals is affirmed in part and reversed in part, and the order of the Industrial Commission awarding permanent and total disability compensation to claimant is reinstated.

*Judgment affirmed in part*
*and reversed in part.*

MOYER, C.J., A.W. SWEENEY, DOUGLAS, F.E. SWEENEY and PFEIFER, JJ., concur.

WRIGHT, J., concurs in part and dissents in part.

_____

**WRIGHT, J., concurring in part and dissenting in part.**

{¶ 42} I dissent from the holding in Part I of the majority's opinion (and paragraph one of the syllabus) because I believe our decision in *State ex rel. Zamora v. Indus. Comm.* (1989), 45 Ohio St.3d 17, 543 N.E.2d 87, precludes the commission from relying on the C-174 forms as the basis for its conclusion that Baker certified the herniated disc condition as allowed.  While not an issue in this case, I also write briefly on the subject of invoking the continuing jurisdiction of the commission, a subject raised by the majority in response to Baker's assertion that it made a clerical error in reporting "herniated disc" as an allowed condition on three C-174 forms.

I

{¶ 43} In *Zamora*, the claimant injured his ankle and foot in a work-related accident in 1963.  In 1984, the claimant sought to additionally allow a mental condition (depression).  At the same time, claimant applied for permanent and total disability compensation based on his physical and mental conditions.

{¶ 44} The commission requested specialists' reports from five doctors. Three of the doctors examined claimant's physical condition; two of the doctors,

Drs. Mann and Kogut, examined claimant's mental condition. Dr. Kogut concluded in his report that claimant's mental condition was a moderate depression but that the condition preceded, and was only minimally affected by, claimant's 1963 injury. The regional board of review nevertheless modified claimant's claim to allow for depression. In allowing the condition, the commission relied on a letter from Dr. Mann, a letter written in response to Dr. Kogut's report.

{¶ 45} Later, the commission denied claimant's application for permanent and total disability compensation. In reaching its decision on this issue, the commission relied "particularly on the medical report [sic] of Drs. Brown and Kogut." In *Zamora* we stated that the commission should not have based its decision on Dr. Kogut's report because of the regional board's earlier implicit rejection of that report in deciding whether to allow claimant's mental condition. We reasoned, "it would be inconsistent to permit the commission to reject the Kogut report at one level, for whatever reason, and rely on it at another." *Id.* at 19, 543 N.E.2d at 89.

{¶ 46} In this case the C-174 forms containing the herniated disc condition are dated December 1, 1985, October 11, 1986, and December 31, 1986. On April 20, 1987, the commission denied appellee further temporary total disability payments in an order that listed "lumbosacral strain" *as the only allowed condition*. The order did not list "herniated disc" as an allowed condition. Thus the commission implicitly decided then that the C-174 forms were insufficient to establish herniated disc as an allowed condition. Our decision in *Zamora* prohibits the commission from using this evidence now as proof that Baker has in fact certified the condition.

II

{¶ 47} Baker claims it made a clerical error on the three C-174 forms which listed "herniated disc" as an allowed condition. Whether that is true or not in this case, it is inevitable that in the future self-insured employers like Baker will make

clerical errors on C-174 forms and that many of those errors will lie dormant in files for years. The majority states that in such a situation a self-insured employer may invoke the continuing jurisdiction of the commission provided that the employer does so within a reasonable period of time.

{¶ 48} In this case the majority determines the reasonableness of Baker's actions by comparing the date Baker actually made the error (1985) with the date Baker attempted to invoke the continuing jurisdiction of the commission (1990). In my opinion, the inquiry should focus on the date the employer *discovered or should have discovered* its error. Otherwise, the employer may be required to do the impossible, *i.e.*, invoke the continuing jurisdiction of the commission before the employer realizes an error was made.

### III

{¶ 49} For the foregoing reasons, I respectfully dissent from Part I of the majority's opinion.

————————————