[Cite as *State ex rel. Montevideo v. Indus. Comm.*, 2015-Ohio-4867.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Joseph Montevideo, | : | |
| Relator, | : | |
| v. | : | No.  15AP-43 |
| Industrial Commission of Ohio and National Gypsum Services Company, | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

D E C I S I O N

Rendered on November 24, 2015

*Heller, Maas, Moro & Magill Co., L.P.A.,* and *Robert J. Foley,* for relator.

*Michael DeWine*, Attorney General, and *Lisa R. Miller,* for respondent Industrial Commission of Ohio.

*Kastner, Westman, & Wilkins LLC,* and *Mark E. Snyder,* for respondent National Gypsum Company.

IN MANDAMUS

BRUNNER, J.

{¶ 1}  Relator, Joseph Montevideo, has filed this original action requesting the court to issue a writ of mandamus directing respondent Industrial Commission of Ohio ("commission") to vacate its June 5, 2014 order in which it exercised continuing jurisdiction to vacate the January 23, 2014 order of its staff hearing officer ("SHO").  The SHO had decided to award relator permanent total disability ("PTD") compensation, and relator asks this court to direct the commission to order PTD compensation as did the SHO.

{¶ 2}   The matter was referred to a magistrate pursuant to Civ.R. 53(C) and Loc.R. 13(M) of the Tenth District Court of Appeals.  The magistrate's decision included findings of fact and conclusions of law and is appended hereto.

{¶ 3}   Recommending that we deny a writ of mandamus, the magistrate concluded that the commission did not abuse its discretion in exercising its continuing jurisdiction, as it decided that the SHO had made a clear mistake of law in failing to address whether relator had voluntarily retired in 1995.  Due to the latency period of the occupational disease, which was diagnosed long after retirement, the commission found that PTD compensation was not precluded by retirement, but in its de novo consideration of relator's PTD application the commission also accepted the conclusions of Ira J. Ungar, M.D. and Paul B. Bartos, M.D., who had examined relator at the requests of his employer, respondent National Gypsum Services Company, and the commission, respectively, that relator yet was able to perform sedentary work notwithstanding the industrial injury. The magistrate held that the commission did not abuse its discretion in its consideration and analysis of non-medical disability factors: it did not have to accept the conclusions of relator's proffered vocational expert, and it properly considered and evaluated relator's work history.

{¶ 4}   No objections to the magistrate's decision have been filed.  We find no error of law or other defect in the decision.  Therefore, we adopt the decision as our own, including the findings of fact and conclusions of law contained therein.

{¶ 5}   In accordance with the magistrate's decision, we deny the requested writ of mandamus.

*Writ of mandamus denied.*

KLATT and LUPER SCHUSTER, JJ., concur.

_____

# APPENDIX

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Joseph Montevideo, | : | |
| Relator, | : | |
| v. | : | No. 15AP-43 |
| Industrial Commission of Ohio and National Gypsum Services Company, | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

---

### M A G I S T R A T E ' S   D E C I S I O N

#### Rendered on September 10, 2015

---

*Heller, Maas, Moro & Magill Co., L.P.A.,* and *Robert J. Foley,* for relator.

*Michael DeWine*, Attorney General, and *Lisa R. Miller,* for respondent Industrial Commission of Ohio.

*Kastner, Westman, & Wilkins LLC,* and *Mark E. Snyder,* for respondent National Gypsum Company.

---

### IN MANDAMUS

{¶ 6} In this original action, relator, Joseph Montevideo, requests a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its June 5, 2014 order that exercised continuing jurisdiction to vacate the January 23, 2014 order of its staff hearing officer ("SHO") that had awarded permanent total disability ("PTD") compensation, and to enter an order reinstating the SHO's order of January 23, 2014.

Findings of Fact:

{¶ 7}   1. On May 25, 2012, relator filed an application for workers' compensation benefits.  The application alleged that relator had acquired an occupational disease arising out of and in the course of his employment with respondent, National Gypsum Company ("National Gypsum" or "employer"), a state-fund employer.[1]

{¶ 8}   2. On December 17, 2012, the Ohio Bureau of Workers' Compensation ("bureau") mailed an order allowing the industrial claim (No. 11-869843) for "asbestosis; pleurisy without mention of effusion or current tuberculosis bilateral."  The bureau and the commission officially recognize March 23, 2011 as the date of injury or diagnosis.  The bureau order was not administratively appealed.

{¶ 9}   3. Relator's date of birth is January 6, 1933.

{¶ 10}  4. In 1995, at the age of 62 years, relator retired from his employment as a machine operator at National Gypsum where he had worked for some 43 years.

{¶ 11} 5. Relator has not returned to any employment following his 1995 retirement.

{¶ 12} 6. On April 10, 2013, at his own request, relator was examined by Waleed N. Mansour, M.D.  In his five-page narrative report, Dr. Mansour opines:

> Based on a reasonable degree of medical certainty, the known mechanism of injury, review of the available medical documentation, interview with the [Injured Worker] and today's examination, I am of the medical opinion that the impairments relative to the allowed conditions in the claims reviewed rise to the necessary criteria to meet definitions by Ohio Rule for Permanent and Totally Disability from any and all gainful employment.

{¶ 13} 7. On June 4, 2013, relator filed an application for PTD compensation.  In support, relator submitted the report of Dr. Mansour.

{¶ 14} 8. On his application, under the "Education" section, relator indicated that the fifth grade was the highest grade of school he had completed.  Completion of his education occurred in Italy in 1943.  Relator never obtained a certificate for passing the

---

[1] The complaint alleges that the employer is National Gypsum Services Company.  However, National Gypsum Company answered the complaint.

General Education Development test ("GED"). Thereafter, relator immigrated to the United States.

{¶ 15} 9. On August 14, 2013, at the employer's request, relator was examined by Ira J. Ungar, M.D. In his four-page narrative report dated August 17, 2013, Dr. Ungar opined:

> Although it is quite clear that Mr. Montevideo could not return to work in any form of substantive manual labor, he is clearly capable of job duties in the sedentary or very light job duty categories. This is fully consistent with his objective evaluation on this date and fully consistent with an individual who is responsible for all their activities of daily living.

{¶ 16} 10. On September 19, 2013, at the commission's request, relator was examined by Paul B. Bartos, M.D. In his five-page narrative report dated October 2, 2013, Dr. Bartos opined:

> Based upon the history and physical examination, review of the medical documentation provided, review of mechanism of injury, and treatment received and response to treatment, as well as the effect of the claimant's symptoms on his activities of daily living, it is my professional opinion that the claimant is capable of light duty work.
>
> He has stable asbestosis. This has not changed significantly over the past number of years. He is currently receiving no treatment for this condition. He is on no prescribed medications nor is he on supplemental oxygen.
>
> He is independent with his activities of daily living and is able to drive short distances. He is capable of lifting up to 20 pounds on an occasional basis and up to 10 pounds on a frequent basis. This places him in the category of light duty capacity.

{¶ 17} 11. On November 4, 2013, at his own request, relator was interviewed and tested by vocational expert Shannon C. Valentine. In her four-page narrative report, Valentine opines:

> In the opinion of this Vocational Specialist, Mr. Montevideo is displaying insufficient worker traits to qualify for gainful employment. He presents with chronic respiratory

limitations. The combined effects of these limitations would impact negatively on his capacity to engage in sustained competitive employment. He also presents with neither marketable nor transferable skills given his past relevant work history and current physical limitations.

Mr. Montevideo does not appear capable of engaging in activities of a light duty nature, as indicated by Paul Bartos, M.D. Light duty work requires working at a production rate pace entailing the constant pushing/pulling of materials even though the weight of those materials is negligible. His general performance on dexterity testing would suggest decreased productivity and therefore would not be considered competitive in the local labor market. Light duty work would require an individual to be up on his/her feet for up to 68% of the workday. Mr. Montevideo does not appear capable of meeting this physical demand level. At best, Mr. Montevideo appears limited to sedentary activities.

In addition to this, Mr. Montevideo is of advanced age (80) for work and therefore he is not, in my professional opinion, a candidate for vocational rehabilitation services.

**When considering all information presented, it is the opinion of this Vocational Specialist that Mr. Montevideo would not be capable of engaging in any sustained, remunerative employment.**

(Emphasis sic.)

{¶ 18} 12. Following a January 23, 2014 hearing, an SHO issued an order awarding PTD compensation starting April 10, 2013 based exclusively upon the report of Dr. Mansour. The SHO held that it was unnecessary to discuss or analyze the non-medical disability factors. The SHO's order was mailed on January 28, 2014.

{¶ 19} 13. On February 11, 2014, the employer moved for reconsideration of the SHO's order of January 23, 2014. In its motion, the employer alleged that the SHO's order contains "clear mistakes of fact and law."

{¶ 20} 14. The employer alleged that the SHO erred in failing to address whether relator had voluntarily retired in 1995 when he left his employment at National Gypsum.

{¶ 21} Also, the employer alleged that the SHO erred in relying upon the report of Dr. Mansour.  The employer argued that the report was not some evidence upon which the commission could rely.

{¶ 22} 15. On May 15, 2014, the three-member commission mailed an interlocutory order, stating:

> It is the finding of the Industrial Commission the Employer has presented evidence of sufficient probative value to warrant adjudication of the Request for Reconsideration regarding the alleged presence of a mistake of fact and a mistake of law of such character that remedial action would clearly follow.
>
> Specifically, it is alleged the Staff Hearing Officer made clear mistakes of law and fact when he granted the IC-2 Application for Compensation for Permanent Total Disability, as the Staff Hearing Officer failed to address whether the Injured Worker's retirement in 1995 was voluntary or involuntary, and the Staff Hearing Officer relied upon the 04/10/2013 report of Waleed Mansour, M.D., which is not some evidence to support an award of permanent total disability compensation.

{¶ 23} 16. Following a June 5, 2014 hearing, the commission issued an order granting the employer's motion for reconsideration and vacating the SHO's order of January 23, 2014.  The commission exercised its continuing jurisdiction over the SHO's order of January 23, 2014 on grounds that the order contains a clear mistake of law by failing to address whether relator voluntarily retired in 1995.

{¶ 24} Even though the commission found a clear mistake of law on grounds that the SHO failed to address voluntary retirement, the commission further held that the retirement does not preclude PTD compensation because of the long latency period of the occupational disease which was diagnosed long after the retirement.  The commission relied upon *State ex rel. Liposchak v. Indus. Comm.*, 73 Ohio St.3d 194 (1995) and *State ex rel. Vansuch v. Indus. Comm.*, 83 Ohio St.3d 558 (1998) — two cases in which the retirement of the injured worker was held to not preclude PTD compensation because of the long latency period of the occupational disease at issue.

{¶ 25} Thus, while the commission found that the SHO's order of January 23, 2014 contains a clear mistake of law for the failure to address the retirement issue, the commission ultimately determined that the retirement issue did not preclude the PTD compensation that the SHO's order had awarded.  However, because the commission vacated the SHO's order upon the exercise of continuing jurisdiction, the commission determined de novo the merits of the PTD application.

{¶ 26} In determining the merits of the PTD application de novo, the commission did not rely upon the report of Dr. Mansour as the SHO had done.  Rather, the commission relied upon the October 2, 2013 report of Dr. Bartos and the August 17, 2013 report of Dr. Unger in determining residual functional capacity.  That is, based upon the two medical reports, the commission found that the industrial injury permits sedentary work.  Given that the commission determined that relator is medically able to perform sedentary work, the commission, unlike the SHO, found it necessary to analyze the non-medical disability factors.  The commission explained:

> The Injured Worker is currently 81 years of age, which is found to be a negative vocational factor. However, a mere increase in age, rather than the allowed disability, may not be the sole causative factor to support an award. State ex rel. Speelman v. Indus. Comm., 73 Ohio App.3d 757, 590 N.E. 2d 192 (1992).
>
> The Injured Worker attended school through the fifth grade in Italy, then immigrated to the United States. The Injured Worker is able to read and perform basic math, but does not write well per his IC-2 Application for Compensation for Permanent Total Disability. The Commission finds this factor is neutral as the Injured Worker has no educational problems and is able to read and perform basic math. Furthermore, the Injured Worker's education was not a barrier to obtaining and sustaining employment for over forty years.
>
> The Injured Worker worked approximately 43 years for the Employer as a machine operator, and worked approximately 11 years as a tailor for a department store, per the Injured Worker's IC-2 Application. The Injured Worker worked for two different employers for long periods of time. The Commission finds this factor is positive as it demonstrates a loyal, stable, and dependable employee. The Commission

finds the Injured Worker's former position as a tailor provided the Injured Worker with transferrable skills, which can be utilitized [sic] in a sedentary position. The Injured Worker could perform tailor work activities as long as he was able to sit most of the time and walking and standing were only required occasionally.

The Commission finds the Injured Worker has not demonstrated efforts to return to work or to improve his reemployment potential. Per State ex rel. Wilson v. Indus. Comm., 80 Ohio St.3d 250, 685 N.E.2d 774 (1997), it is not unreasonable to expect an injured [w]orker to participate in return-to-work efforts to the best of his or her abilities, or to take the initiative to improve reemployment potential. See State ex re[l]. Wilson v. Indus. Comm., 80 Ohio St.3d 250, 253 685 N.E.2d 774 (1997). While extenuating circumstances can excuse an injured worker's participation in re-education or retraining efforts, injured workers should no longer assume that a participatory role, or lack thereof, will go unscrutinized. Id.

Based upon Drs. Ungar and Bartos' reports, the Injured Worker's transferable skills as a tailor, and the Injured Worker's current physical abilities, the Commission does not find the Injured Worker is precluded from performing sustained remunerative employment.

{¶ 27} 17. On January 20, 2015, relator, Joseph Montevideo, filed this mandamus action.

Conclusions of Law:

{¶ 28} Two issues are presented:  (1) did the commission abuse its discretion in the exercise of its continuing jurisdiction by finding that the SHO's order of January 23, 2014 contained a clear mistake of law by failing to address the retirement issue, and (2) assuming that the commission did not abuse its discretion in the exercise of its continuing jurisdiction, did the commission abuse its discretion in its consideration and analysis of the non-medical disability factors.

{¶ 29} The magistrate finds:  (1) the commission did not abuse its discretion in exercising its continuing jurisdiction, thus reaching the merits of the PTD application, and (2) the commission did not abuse its discretion in its consideration and analysis of the non-medical disability factors.

{¶ 30} Accordingly, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.

### First Issue

{¶ 31} Turning to the first issue, a voluntary abandonment from the workforce prior to asserting permanent total disability precludes the payment of compensation for that disability. *State ex rel. Cinergy Corp./Duke Energy v. Heber,* 130 Ohio St.3d 194, 2011-Ohio-5027 citing *State ex rel. Baker Material Handling Corp. v. Indus. Comm.,* 69 Ohio St.3d 202 (1994), paragraph two of the syllabus. The character of a claimant's retirement is therefore critical to a PTD analysis. *Id.* When the commission fails to address the voluntariness of a retirement when that issue is put before it in a PTD proceeding, the commission has abused its discretion and mandamus relief will be granted. *Id.*

{¶ 32} Here, relator does not dispute that the retirement issue was raised by the employer at the January 23, 2014 hearing before the SHO despite the fact that the SHO's order fails to address the retirement issue.

{¶ 33} According to relator, the SHO was not required to address the retirement issue when the retirement does not preclude PTD compensation. According to relator, "[t]he Commission chose to exercise continuing jurisdiction solely because the Staff Hearing Officer did not take on the inconsequential task of addressing the issue in his order." (Relator's brief, 13-14.)

{¶ 34} Relator's argument is premised upon a hindsight analysis of the retirement issue. In effect, relator is arguing that the SHO can choose to privately address the issue and, if PTD is not precluded, fail to place the analysis in the order for court review. Relator cites to no authority to support the proposition. It is well-settled law that the commission abuses its discretion when it fails to address in its order a key issue that was put before it in determining a request for compensation. *State ex rel. Gen. Am. Transp. Corp. v. Indus. Comm.,* 49 Ohio St.3d 91 (1990); *State ex rel. B.O.C. Group, Gen. Motors Corp. v. Indus. Comm.,* 58 Ohio St.3d 199 (1991); *State ex rel. Peabody Coal Co. v. Indus. Comm.,* 66 Ohio St.3d 639 (1993).

{¶ 35} Moreover, in a case similar to the instant action, this court recently rejected an argument similar to the one put forth by relator here. In <u>State ex rel. Sheppard v.</u>

Indus. Comm., 10th Dist. No. 11AP-553, 2012-Ohio-4301, the claimant, Robert L. Sheppard, applied for PTD compensation. Following an order of the SHO awarding PTD compensation, the employer moved for reconsideration. The commission granted reconsideration based upon its continuing jurisdiction and ultimately denied the PTD application. This court stated:

> Although we agree with the general principle that the commission is required only to cite evidence in support of the order, the commission's concern here was that the SHO failed to give any indication whatsoever that he even considered the employer's "critical" argument regarding the intervening injury. This court has before found that an SHO's failure to address an issue raised by an employer constitutes a mistake of law sufficient for the commission to invoke continuing jurisdiction. *See State ex rel. Mackey v. Ohio Dept. of Edn.,* 10th Dist. No. 09AP-966, 2010-Ohio-3522, ¶ 8, citing *State ex rel. Hayes v. Indus. Comm.,* 10th Dist. No. 01AP-1087, 2002-Ohio-3675 (concluding it was an abuse of discretion for an SHO to fail to address an issue when the employer had presented the issue; the commission did not abuse its discretion by invoking its continuing jurisdiction to address the issue). Furthermore, we cannot simply assume that the SHO rejected the intervening-injury argument based upon his failure to address it. *See id.* at ¶ 7-8 (rejecting claimant's contention that, by not addressing the employer's argument, the SHO "obviously" rejected the argument). Therefore, in this case, we find the commission properly exercised continuing jurisdiction on the basis that the SHO's failure to address the employer's critical argument regarding the alleged intervening injury constituted a mistake of law.

*Id.* at ¶ 4.

{¶ 36} Accordingly, the magistrate finds that the commission did not abuse its discretion in exercising its continuing jurisdiction.

### Second Issue

{¶ 37} In its June 5, 2014 order, the commission stated reliance upon the October 2, 2013 report of Dr. Bartos and the August 17, 2013 report of Dr. Ungar in determining residual functional capacity. Ohio Adm.Code 4121-3-34(B)(4). Based upon the two reports, the commission concluded that relator is medically able to perform sedentary work.

{¶ 38} Here, relator does not challenge the medical reports of Drs. Bartos and Ungar nor the commission's conclusion that relator is medically able to perform sedentary work.

{¶ 39} However, relator does challenge the commission's analysis of the non-medical disability factors.

{¶ 40} To begin, relator seems to suggest that the commission was required to rely upon the Valentine vocational report because there was no other vocational report submitted. This is incorrect. The commission may credit offered vocational evidence, but expert opinion is not critical or even necessary because the commission is the expert on the issue. *State ex rel. Jackson v. Indus. Comm.*, 79 Ohio St.3d 266, 271 (1997).

{¶ 41} Relator also seems to suggest that the commission abused its discretion in analyzing relator's work history. The commission's order notes that relator worked approximately 43 years for the employer, National Gypsum, as a machine operator. The commission also found that relator worked for 11 years as a tailor in a department store. The commission found this factor to be a "positive" as it demonstrates a loyal, stable, and dependable employee.

{¶ 42} The commission's analysis regarding work history is supported by *State ex rel. Ewart v. Indus. Comm.*, 76 Ohio St.3d 139, 142-43 (1996), wherein the court states:

> The freedom to independently evaluate nonmedical factors is important because nonmedical factors are often subject to different interpretation.
>
> * * *
>
> The same can be said in this case with regard to claimant's work history. Claimant worked for Refiners Transport and Terminal as a trucker for twenty-two years. Claimant's long tenure can be viewed negatively because it prevented the acquisition of a broader range of skills that more varied employment might have provided. It also, however, suggests a stable, loyal and dependable employee worth making an investment in. This is an asset and is an interpretation as valid as the first.

*Id.* at 141-42.

{¶ 43} Thus, based upon *Ewart,* it was well within the commission's fact finding discretion to view relator's work history as "positive" because, as the commission found, it demonstrated a "loyal, stable, and dependable employee."

{¶ 44} It can be further noted that the commission found that relator's employment as a tailor provided relator with transferrable skills. Ohio Adm.Code 4121-3-34-(B)(3)(c) provides:

> (iv) "Transferability of skills" are skills that can be used in other work activities. Transferability will depend upon the similarity of occupational work activities that have been performed by the injured worker. Skills which an individual has obtained through working at past relevant work may qualify individuals for some other type of employment.
>
> (v) "Previous work experience" is to include the injured worker's usual occupation, other past occupations, and the skills and abilities acquired through past employment which demonstrate the type of work the injured worker may be able to perform. Evidence may show that an injured worker has the training or past work experience which enables the injured worker to engage in sustained remunerative employment in another occupation. The relevance and transferability of previous work skills are to be addressed by the adjudicator.

{¶ 45} Thus, the commission reasoned that relator can return to the work that he has previously demonstrated to have the skills to perform. Given that the commission found that relator is medically able to perform sedentary work, it was logical to conclude that relator can return to "tailor work."

{¶ 46} Relator further suggests that the commission abused its discretion in determining that his educational status is a "neutral" factor. The commission explained that relator is able to read and perform basic math and, furthermore, his education had not been a barrier to obtaining work for over 40 years. Obviously, the commission was not persuaded that relator's fifth grade education was a barrier to re-employment. That is, relator's educational status permitted him to work for some 43 years. Clearly, the commission's finding that relator's educational status was a "neutral" factor was well within the commission's discretion.

{¶ 47} Thus, for all the above reasons, the magistrate finds that the commission did not abuse its discretion in finding relator able to perform sustained remunerative employment.

{¶ 48} Accordingly, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.

/S/ MAGISTRATE
KENNETH W. MACKE

## NOTICE TO THE PARTIES

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).