DECISION ON OBJECTIONS TO MAGISTRATE'S DECISION
{¶ 1} Relator, Cassens Transport Co., has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission"), to vacate its order awarding permanent total disability ("PTD") compensation to respondent William A. Warrick ("claimant") and to enter an order denying said compensation.
 {¶ 2} Pursuant to Civ. R. 53(C) and Loc. R. 12(M) of the Tenth District Court of Appeals, this case was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) In his decision, the magistrate found that the commission did not abuse its discretion in granting claimant's request for PTD. Therefore, the magistrate recommended that this court deny the requested writ of mandamus.
 {¶ 3} Relator has filed objections to the magistrate's decision in which it essentially re-argues the same points addressed in the magistrate's decision. The basis of relator's first objection is that the vocational assessment report of Barbara Burk is not sufficient evidence to support the PTD award because said report relies on the medical assessment of Dr. Picklow, which is premised upon non-allowed and allowed medical conditions. We do not find relator's position well-taken. As stated by the magistrate, the commission is the expert on vocational factors regarding PTD determinations, and thus it need not credit any vocational opinions offered. State ex rel. Jackson v. Indus. Comm.
(1997), 79 Ohio St.3d 266. Further, it is within the commission's fact-finding discretion to reject a vocational report's conclusion yet accept some of its findings. State ex rel. Ewart v. Indus. Comm. (1996),76 Ohio St.3d 139. Accordingly, we overrule relator's first objection to the magistrate's decision.
 {¶ 4} Relator's second objection relates to the magistrate's conclusion that the commission adequately considered claimant's rehabilitation efforts in rendering its PTD determination. For the reasons set forth in the magistrate's decision, we do not find relator's objection well-taken and accordingly overrule relator's second objection.
 {¶ 5} Following an independent review of the matter, we find that the magistrate has properly determined the facts and applied the appropriate law. Therefore, relator's objections to the magistrate's decision are overruled and we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, we deny the requested writ of mandamus.
Objections overruled; writ of mandamus denied.
 BROWN, P.J. and KLATT, J., concur. APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
 State of Ohio ex rel. :
 Cassens Transport Co., :
 Relator, :
 v. : No. 04AP-1150
 Industrial Commission of Ohio : (REGULAR CALENDAR)
 and William A. Warrick, :
 Respondents. :
 MAGISTRATE'S DECISION Rendered on April 21, 2005 Schottenstein, Zox Dunn, Corey V. Crognale and Meghan M. Majernik,
for relator.
Jim Petro, Attorney General, and Andrew J. Alatis, for respondent Industrial Commission of Ohio.
Garson Associates Co., L.P.A., and Grace A. Szubski, for respondent William A. Warrick.
In Mandamus
 {¶ 6} In this original action, relator, Cassens Transport Co., requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order awarding permanent total disability ("PTD") compensation to respondent William A. Warrick ("claimant") and to enter an order denying said compensation.
Findings of Fact:
 {¶ 7} 1. On August 13, 1997, claimant sustained an industrial injury while employed as a tractor-trailer truck driver for relator, a self-insured employer under Ohio's workers' compensation laws. On that date, the tractor — trailer claimant was driving jackknifed into a guard rail. The industrial claim is allowed for: "cervical strain; lumbar strain; right flank strain; right hand median paresthesia; herniated nucleus pulposus at L4-S1," and is assigned claim number 97-512125.
 {¶ 8} 2. Claimant has not worked since the date of his August 13, 1997 injury.
 {¶ 9} 3. Claimant also earlier sustained an industrial injury in 1996 which is allowed for: "lumbar strain," and is assigned claim number 96-584002.
 {¶ 10} 4. On April 6, 1998, claimant underwent a lumbar decompression L5 and a lumbar fusion L5-S1 using pedicular screws and plates. This surgery was performed by William Welch, M.D.
 {¶ 11} 5. In August 1999, claimant underwent surgery to remove the hardware used in the April 6, 1998 surgery.
 {¶ 12} 6. On January 18, 2000, claimant underwent a diskectomy at C6-7. Relator paid for the January 18, 2000 surgery.
 {¶ 13} 7. A report authored by Christopher B. Staub, MPT, of NovaCare Rehabilitation, states that claimant completed 12 weeks of physical therapy at NovaCare on July 11, 2000.
 {¶ 14} 8. A C-84 from Dr. Welch, dated June 14, 2000, certified temporary total disability from August 13, 1997 to an estimated return-to-work date of July 15, 2000, based upon "cervical radiculopathy." The record does not contain other C-84s extending temporary total disability compensation beyond July 15, 2000.
 {¶ 15} 9. On October 7, 2003, claimant filed an application for PTD compensation. In support, claimant submitted a report, dated May 9, 2003, from Francis E. Picklow, M.D. Dr. Picklow reported:
* * * [P]atient was examined by me for impairment evaluation of the following allowed injuries: Sprain: Cervical with C6 Disc Hernia; Sprain: Lumbar Back/Flank, Right; Paresthesia: Hand, Median, Right.
* * *
IMPRESSION:
Sprain: Cervical with C6 Disc hernia; Sprain: Lumbar Back/-Flank, Right; Paresthesia: Hand, Median, Right.
Taking into consideration the AMA Guidelines for Impairment Evaluation 5th Edition, as well as the patient's subjective complaints as well as the objective findings, that within reasonable probability, this patient will continue for an indefinite period of time, without any present indication of recovery there from, to be essentially incapable of any sustained remunerative employment and therefore should be considered permanently and totally disabled.
 {¶ 16} 10. In further support of his PTD application, claimant submitted a report, dated September 22, 2003, from Barbara E. Burk, a vocational expert. Ms. Burk reported:
William Warrick is a person who is closely approaching advanced age. He has a high school education and past relevant work activity as a Tractor-Trailer Truck Driver (DOT # 904.383-010), an occupation that is customarily medium in strength demands and semi-skilled. These skills do not transfer to jobs that are customarily light or sedentary. Mr. Warrick has not worked since August 13, 1997 due to a work-related accident. His claim has been allowed for cervical sprain; lumbar sprain; right flank sprain; herniated disc C6-7; right hand median paresthesia.
When considering Mr. Warrick's age, education, work history, time out of the labor market, probable limited job search and interview skills and the opinion of Francis E. Picklow, M.D., it is my professional opinion that Mr. Warrick is not a candidate for sustained remunerative employment activity. Dr. Picklow opined that Mr. Warrick is permanently and totally disabled. This opinion, alone, removes Mr. Warrick from our competitive labor market. He is further limited by the effects of non-medical factors, including his age, lack of transferable skills, work history limited to one occupation that is medium in physical demands, very lengthy absence from competitive employment and probable lack of adequate job search and job interviewing skills to overcome the numerous barriers to re-employment. The effects of these non-medical factors are very significant.
When considering the effects of non-medical factors and Dr. Picklow's opinion, it is my professional opinion that Mr. Warrick is not a candidate for academic or skill enhancement programs or vocational rehabilitation. Dr. Picklow's opinion precludes participation is such programs. The effects of non-medical factors are very significant and suggest that this individual would not successfully meet the goals of such programs.
* * *
When considering this person as a whole, it is my professional opinion that Mr. Warrick is no longer a candidate for sustained remunerative employment activity, academic or skill enhancement programs or vocational rehabilitation.
 {¶ 17} 11. On November 20, 2003, claimant was examined at relator's request by Kiva Shtull, M.D. Dr. Shtull reported:
* * * Based upon the history, physical examination and review of the medical file, it is my opinion within a reasonable degree of medical probability that the claimant is absolutely capable of the sedentary work category and the light work category, and also very possibly the medium physical demand category. * * *
 {¶ 18} 12. On January 8, 2004, claimant was examined at the commission's request by Angelo Constantino, M.D. Dr. Constantino issued a narrative report and completed a physical strength rating form. On the form, Dr. Constantino indicated that claimant is capable of light work.
 {¶ 19} 13. The commission requested an employability assessment report from Janet Chapman, a vocational expert. The Chapman report, dated February 14, 2004, responds to the following query:
Based on your separate consideration of reviewed medical and psychological opinions regarding functional limitations which arise from the allowed condition(s), identify occupations which the claimant may reasonably be expected to perform, (A) immediately and/or (B) following appropriate academic remediation, or brief skill training.
 {¶ 20} Indicating acceptance of the reports of Dr. Constantino and responding to the above query, Chapman listed the following employment options: "Assembler, sorter, food checker, machine engraver, machine operator, cleaner."
 {¶ 21} Indicating acceptance of Dr. Shtull's report and responding to the above query, Chapman listed the same employment options that she listed for Dr. Constantino's report.
Under "III Effects of Other Employability Factors," Chapman wrote:
[One] Question: How, if at all, do the claimant's age, education, work history or other factors (physical, psychological and sociological) affect his/her ability to meet basic demands of entry level occupations?
Answer: Age: Advancing age may be a negative factor in adjusting to work unlike that previously performed, particularly a restricted range of light and sedentary work.
Education: Educational levels appear adequate for entry-level work.
Work History: Past work history does not provide experience in settings where work at lesser exertional levels is typically found; Mr. Warrick has worked primarily as a truck driver.
Other: Mr. Warrick underwent multiple lumbar and cervical surgeries from 1998 to 2000. He reportedly takes Tylenol for pain relief.
He was allowed SS disability benefits effective 2/98.
[Two] Question: Does your review of background data indicate whether the claimant may reasonably develop academic or other skills required to perform entry level Sedentary or Light jobs?
Answer: The claimant currently possesses the skills required for entry level work.
[Three] Question: Are there significant issues regarding potential employability limitations or strengths which you wish to call to the SHO's attention?
Answer: Mr. Warrick has not worked since his injury in 1997 which is a significant time out of the work force and is indicative that return to work may be more difficult.
He also reports a loss of feeling in his dominant hand and difficulty holding items in that hand. Dr. Constantino notes in his report that "loss of feeling in the right hand limits tacticle (sic) sensation dependent tasks." Significant deficits in ability to use the dominant hand may prevent performance of many entry level sedentary and light jobs.
Mr. Warrick reports difficulty in remaining seated and in standing for long periods. Entry-level sedentary and light work generally requires one to maintain a seated or standing position for extended periods with little opportunity to change position at will.
(Emphasis omitted.)
Under "IV Employability Assessment Database," Chapman wrote:
B. WORK HISTORY:
Job Title * * * Skill Level Strength Level Dates
Tractor-trailer * * * Semi-skilled Medium 1965-97
truck driver
Assembler, * * * Unskilled Medium 1959-65
Motor vehicle
C. EDUCATIONAL HISTORY:
Highest grade completed: 12
Date of last attendance: 1958
H.S. Graduate: Yes
GED: NA
Vocational training: None
ICO Educational Classification: High School Education or above

(Emphasis omitted.)
 {¶ 22} 14. Following an April 6, 2004 hearing, a staff hearing officer ("SHO") issued an order awarding PTD compensation. The SHO's order states:
Permanent and total disability compensation is hereby awarded from 05/09/2003[.] * * *
* * *
Claimant was born on 10/17/1940 and is a high school graduate. Claimant has previously worked as an assembler and a truck driver. Claimant was initially injured on 12/20/1996, sustaining a lumbar strain. This claim resulted in minimal benefits being paid. Thereafter, on 08/13/1997, he sustained his second injury which has been recognized for cervical strain, lumbar strain, flank strain, right hand median paresthesia and herniated nucleus pulposus L4-S1. Claimant underwent a laminectomy and decompression of L5 with fusion (including plates and screws) on 04/06/1998, had the hardware removed on 08/02/1999 and then had paid for in this claim a diskectomy on C6-7 on 01/18/2000. Claimant last worked on 07/13/1997 at the age of 56. Claimant testified at hearing that he was involved in a vocational rehabilitation program in 2000/2001 which included a job search component. However, he further indicated that this effort was discontinued after approximately seven (7) contacts as he felt it was evident that no employer was interested in his services mainly due to his restrictions and residuals from this claim.
The Staff Hearing Officer accepts and relies upon the 01/08/2004 report of Angelo Constantino, M.D., who opines, based on the allowed conditions, that the claimant is able to perform sedentary and light sustained remunerative employment.
The Staff Hearing Officer also accepts and relies upon the 11/20/2003 report of Kiva Shtull, M.D., to the extent that Dr. Shtull also opines that the claimant is capable of performing sedentary and light sustained remunerative employment, but is unable to resume his form[er] position of employment. However, the Staff Hearing Officer specifically rejects Dr. Shtull's comment that the claimant is capable of "very possibly the medium physical demand category." The Staff Hearing Officer finds that such a statement does not provide the degree of medical certainty necessary to be legally sufficient to support its proposition, is not consistent with his opinion that the claimant is unable to resume his former position of employment (a medium strength position) and it is not consistent with the opinion of Dr. Constantino.
Therefore, based on these two (2) reports, the Staff Hearing Officer finds that the claimant is capable of physically performing sedentary or light sustained remunerative employment. However, the Staff Hearing Officer finds that the claimant's former position of employment as a truck driver is rated as, at least, a medium strength position, one which he is no longer physically able to do. Therefore, an analysis of his vocational factors is found to be necessary.
The Staff Hearing Officer accepts and relies upon the 09/22/2003 vocational report of Barbara Burk as well as the 02/16/2004 vocational report of Janet Chapman. Both reports indicate that the claimant's age is a neutral to negative factor (approaching advanced age), his high school education is a positive factor, but his work history is basically a neutral to negative factor. His work history presents a slightly mixed picture. On the positive side, he demonstrated a strong work ethic through his 38 years of continuous employment in a semi-skilled position. However, on the negative side, his employment is typical of an individual with average to below average aptitudes, provides no transferable skills to sedentary or light work and presents adjustment issues for new employment due to his longevity in the truck driving position. He also has been absent from the labor market for over 6 years, which further magnifies any adjustment issues. Finally, the Staff Hearing Officer takes note of the comments of Ms. Chapman who indicates that Dr. Constantino's report contains a reference to the claimant's loss of feeling in his dominant hand and difficulty holding items due to a loss of sensation. She states that these significant deficits may prevent the performance of many entry level sedentary and light jobs.
The Staff Hearing Officer agrees with the overall assessment of Ms. Burk in finding that the totality of the vocationally [sic] information leads one to conclude that the claimant is not vocationally capable of performing alternative sedentary or light sustained remunerative employment. Therefore, the Staff Hearing Officer finds the claimant to be permanently and totally disabled as he is vocationally unqualified to perform any work for which he is otherwise physically able to perform. Therefore, his application is granted to the extent of this order.
Permanent and total disability compensation is ordered to begin on 05/09/2003, the date of Dr. Picklow's report, the first medical report on file which supports this application. This award is totally allocated to Claim 97-512125 as it is this claim which resulted in the conditions and treatment that are the basis of this decision.
 {¶ 23} 15. On October 22, 2004, relator, Cassens Transport Co., filed this mandamus action.
Conclusions of Law:
 {¶ 24} It is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 25} For its threshold medical determination, the commission, through its SHO, determined that the industrial injuries only permit sedentary or light sustained remunerative employment based upon the reports of Drs. Constantino and Shtull. Here, relator does not challenge the commission's determination that the industrial injury only permits sedentary or light sustained remunerative employment, nor does relator challenge the reports of Drs. Constantino or Shtull. However, relator does challenge the commission's nonmedical determination.
 {¶ 26} In challenging the commission's nonmedical analysis, relator sets forth two propositions:
The Industrial Commission abused its discretion by failing to properlyconsider Warrick's lack of effort to obtain re-employment as evidence ofvoluntary removal from the workforce.
* * *
The Industrial Commission abused its discretion by accepting andrelying upon vocational evidence that failed to support the conclusionthat Warrick was unable to engage in any form of sustained remunerativeemployment.
(Relator's brief, at 5-7; emphasis sic.)
 {¶ 27} Relevant to relator's first proposition is Ohio Adm. Code 4121-3-34(D) which sets forth the commission's guidelines for adjudication of PTD applications. Ohio Adm. Code 4121-3-34(D)(1)(d) states:
If, after hearing, the adjudicator finds that the injured worker voluntarily removed himself from the work force, the injured worker shall be found not to be permanently and totally disabled. * * *
Pertinent to the proposition that relator posits is the following portion of the SHO's order:
Claimant testified at hearing that he was involved in a vocational rehabilitation program in 2000/2001 which included a job search component. However, he further indicated that this effort was discontinued after approximately seven (7) contacts as he felt it was evident that no employer was interested in his services mainly due to his restrictions and residuals from this claim.
 {¶ 28} According to relator, based upon the above-quoted findings of the SHO, "the conclusion is inescapable that Warrick failed to make a good faith effort to return to work and simply elected to voluntarily remove himself from the workforce." (Relator's brief, at 6.)
 {¶ 29} Pointing to claimant's six year absence from the workforce at the time of the PTD hearing, relator asserts that the commission's failure "to explore the reasons for this six year absence clearly constitutes an abuse of discretion." Id. at 7. (Emphasis sic.)
 {¶ 30} Relator's proposition and the arguments offered in support do not merit a writ of mandamus.
 {¶ 31} It is undisputed that claimant never returned to work following his August 13, 1997 industrial injury. By the time claimant filed his PTD application on October 7, 2003, he had indeed been absent from the workforce for over six years. The record quickly discloses that during the first three years of this absence, claimant underwent three surgeries and extensive physical therapy. The SHO's order itself indicates that claimant was involved in some kind of vocational rehabilitation program in 2000/2001 which included a job search component. Other than claimant's testimony that his job search effort was discontinued in 2001 after approximately seven contacts, we have no information regarding claimant's circumstances until Dr. Picklow's May 9, 2003 report.
 {¶ 32} Notwithstanding the questions that might be asked as to rehabilitation efforts during all or part of the period of claimant's absence from the workforce, the commission was under no obligation to address those questions in the absence of relator's claim that the claimant had voluntarily removed himself from the workforce.
 {¶ 33} It is well-settled that issues not raised administratively are not reviewable in mandamus. State ex rel. Quarto Mining Co. v. Foreman
(1997), 79 Ohio St.3d 78. There is no evidence in the record that relator ever asserted a claim that the claimant had voluntarily removed himself from the workforce. See State ex rel. Baker Material Handling Corp. v.Indus. Comm. (1994), 69 Ohio St.3d 202, paragraphs two and three of the syllabus. Clearly, relator cannot raise a voluntary abandonment claim in the first instance in this mandamus action. Accordingly, relator's first proposition must be rejected.
 {¶ 34} As previously noted, relator's second proposition is that the vocational evidence relied upon by the commission fails to support the commission's analysis that claimant is permanently and totally disabled. The magistrate disagrees with relator's arguments.
 {¶ 35} Because the commission is the expert on the vocational issues, it need not credit any vocational opinions offered. State ex rel. Jacksonv. Indus. Comm. (1997), 79 Ohio St.3d 266, 271. Moreover, it is within the commission's fact-finding discretion to reject a vocational report's conclusion yet accept some of its findings. State ex rel. Ewart v.Indus. Comm. (1996), 76 Ohio St.3d 139, 141.
 {¶ 36} Here, while the commission stated reliance upon the reports of Burk and Chapman, it is apparent that the commission engaged in its own analysis of the nonmedical factors. Clearly, the commission did not accept Chapman's employment options but did accept some of her findings. It was clearly within the commission's discretion to do so.
 {¶ 37} Relator further argues that the commission cannot rely upon the Burk report because Burk's ultimate conclusion that claimant is permanently and totally disabled is premised upon Dr. Picklow's report which relator asserts was "implicitly rejected" by the commission. (Relator's brief, at 9.)
 {¶ 38} The magistrate disagrees with relator's argument that the commission's stated reliance upon the Burk report constitutes an abuse of discretion. To begin, the last paragraph of the SHO's order indicates that Dr. Picklow's report was accepted as evidence of PTD. The commission specifically started PTD compensation as of May 9, 2003, the date of Dr. Picklow's report. Thus, contrary to relator's suggestion, it was not inconsistent for the commission to state reliance upon the Burk report when it had not rejected Dr. Picklow's report.
 {¶ 39} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.