DECISION ON OBJECTIONS TO THE MAGISTRATE'S DECISION
{¶ 1} In this original action, relator, SBC/Ameritech, requests a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying relator's motion to terminate the temporary total disability ("TTD") compensation being paid to respondent, Ronald S. Graham ("claimant"), and to declare an overpayment of that compensation.
 {¶ 2} This matter was referred to a magistrate of this court pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, recommending that this court deny the requested writ. (Attached as Appendix A.) Relator filed objections to the magistrate's decision. In summary, relator argues: (1) the magistrate erroneously denied relator's request for a writ because no evidence supported an award of TTD compensation; (2) the magistrate erroneously concluded that relator cannot challenge TTD for a recovery period following surgery where relator authorized the surgery; and (3) relator is entitled to a limited writ based upon State ex rel. Noll. v. Indus.Comm. (1991), 57 Ohio St.3d 203.
 {¶ 3} Relator does not challenge the magistrate's findings of fact. Therefore, we adopt the findings of fact contained in the magistrate's decision.
 {¶ 4} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show that it has a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v.Indus. Comm. (1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order that is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. However, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond Foundry Co. (1987),29 Ohio St.3d 56.
 {¶ 5} As to relator's argument that no evidence supports the commission's decision to deny relator's motion to terminate TTD compensation, we disagree. Based on our independent review of the evidence, we agree with the commission that there was some evidence to support its decision. The hearing officers relied on the November 7, 2003 operative report and Dr. Louis Keppler. Dr. Keppler's report of July 2, 2003, ordered an MRI. The July 29, 2003 MRI showed: "Longitudinal tear along the inner margin of the medial meniscus without displaced fragment seen." See Exh. 19. In addition, the district hearing officer found that the "surgery of 11/07/2003 was, in part, to release scar tissue built up from the first surgery of 06/05/2002." While relator argued to the magistrate that there is no medical evidence in the record to support this finding, claimant points to Dr. Keppler's references to the presence and excision of arthrofibrosis during the surgery. With nothing more than relator's conclusory denial of medical support, we will not disturb the commission's findings. In summary, the medical reports provide "some evidence" to support the commission's decision, which declined to terminate TTD compensation for the allowed condition of "torn medial meniscus." Dr. Sheldon Kaffen's disagreement with these findings does not change our outcome. "It is immaterial whether other evidence, even if greater in quality and/or quantity, supports a decision contrary to the commission's." State ex rel. Pass v. C.S.T. Extraction Co. (1996),74 Ohio St.3d 373, 376. On these grounds, we overrule relator's applicable objections.
 {¶ 6} As to relator's argument that it should not be precluded from moving to terminate TTD compensation for a post-surgical recovery period where it authorized the surgery, we note that relator has provided no case support for its position. The commission argues that, if relator believed that the surgery was based on a non-allowed condition, it should have raised this issue administratively and opposed the surgery, not the TTD compensation for the post-surgical recovery period. We agree.
 {¶ 7} On this question, the chronology of events in this case is important. Relator "approved the surgery and accepted the claim for the additional allowance of `Torn Medial Meniscus — left knee'" on September 9, 2003. Dr. Kaffen examined claimant on October 10, 2003. Dr. Kaffen issued his report, which noted that claimant's surgery was scheduled for November 7, 2003, and attributed claimant's injuries to the non-allowed condition of degenerative arthritis on October 17, 2003. Despite having Dr. Kaffen's opinion weeks before the scheduled surgery, relator has presented no evidence that it took any action to stop the surgery or to otherwise change its September 9, 2003 approval. Instead, relator allowed the surgery to go forward and then voluntarily started TTD payments immediately following the surgery. Relator waited until January 12, 2004, to request further evaluation by Dr. Kaffen and then, based on that evaluation, moved to terminate TTD compensation and to declare an overpayment on January 28, 2004, retroactive to the date of surgery. Relator has cited no case, nor have we found one, that would allow relator to collect an overpayment under these circumstances. As a self-insurer, relator is the "`initial processing [agent] of claims brought by [its] employees.'" State ex rel. Baker Material HandlingCorp. v. Indus. Comm. (1994), 69 Ohio St.3d 202, 205, quoting Wargetz v.Villa Sancta Anna Home for the Aged (1984), 11 Ohio St.3d 15, 17. Having approved the November 7, 2003 surgery and allowed it to proceed, despite Dr. Kaffen's October 17, 2003 opinion, relator cannot now claim that TTD compensation should not be paid while claimant heals from the surgery it authorized. It defies common sense to argue that relator's acts of authorizing surgery and beginning TTD payments did not also authorize a reasonable recovery period. Relator has provided no evidence to support such a limited reading of its authorization. On these grounds, we overrule relator's applicable objections.
 {¶ 8} Finally, relator argues that Noll requires reversal of the commission's decision. We disagree. The commission identified the evidence it relied upon, and it provided an explanation for its decision. Thus, Noll does not apply.
 {¶ 9} For these reasons, we overrule relator's objections to the magistrate's decision, adopt the magistrate's decision as our own, and deny the requested writ of mandamus.
Objections overruled, writ of mandamus denied.
McGRATH and CHRISTLEY, JJ., concur.
CHRISTLEY, J., retired of the Eleventh Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
 APPENDIX A
 IN THE COURT OF APPEALS OF OHIO
 TENTH APPELLATE DISTRICT
State of Ohio ex rel. SBC/Ameritech, :
 Relator, :
v. : No. 04AP-978
Industrial Commission of Ohio : (REGULAR CALENDAR)
and Ronald S. Graham, :
 Respondents. :
 MAGISTRATE'S DECISION Rendered on March 17, 2005 Porter, Wright, Morris Arthur LLP, Fred J. Pompeani and Lisa A.Reid, for relator.
Jim Petro, Attorney General, and Charissa D. Payer, for respondent Industrial Commission of Ohio.
Gibson, Brelo, Ziccarelli Martello, Robert A. Boyd and James P.Martello, for respondent Ronald S. Graham.
 IN MANDAMUS {¶ 10} In this original action, relator, SBC/Ameritech, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying relator's motion to terminate the temporary total disability ("TTD") compensation being paid to respondent Ronald S. Graham ("claimant") and to declare an overpayment of said compensation retroactive to the date of the November 7, 2003 surgery, and to enter an order granting relator's motion.
Findings of Fact:
 {¶ 11} 1. On April 8, 2002, claimant sustained a left knee injury while employed with relator, a self-insured employer under Ohio's workers' compensation laws. The industrial claim was initially allowed for "sprain left knee; sprain lateral collateral ligament left knee; contusion left knee," and was assigned claim number 02-821951.
 {¶ 12} 2. On April 29, 2002, an MRI of the left knee showed a medial meniscus tear.
 {¶ 13} 3. On June 5, 2002, claimant underwent left knee arthroscopic surgery performed by Kenneth W. Chapman, M.D. Dr. Chapman performed a left medial meniscectomy.
 {¶ 14} 4. Relator accepted an additional claim allowance for "torn medial meniscus — left knee."
 {¶ 15} 5. On October 10, 2003, claimant was examined at relator's request by orthopedic surgeon Sheldon Kaffen, M.D. In his report dated October 17, 2003, Dr. Kaffen reviews the medical records and states:
* * * The claimant underwent arthroscopic surgery of the left knee on 6/5/02. The findings at arthroscopy consisted of patellofemoral arthritis of the lateral facet with deep fissuring down to subchondral bone, Grade 1 degenerative changes of the femoral condyles in the intercondylar area, a synovial plica and a complex tear of the medial meniscus. The procedure consisted of partial medial meniscectomy and chondroplasty of the medial joint and patellofemoral joint. The description of the treatment of the patellar articular surface indicates that "the patella was shaved down to smooth healthy bone". * * *
 {¶ 16} 6. In his October 17, 2003 report, Dr. Kaffen concluded:
Based on the history and physical examination and review of medical records, it is my opinion the claimant does have "degenerative arthritis of the left knee". The degenerative condition of the left knee involves the articular cartilage of the patella, interchondalar region of the femur and medial condyle of the femur. It should be described as chondromalacia. From the operative report the chondromalacia was most severe on the articular surface of the patella.
Based on a reasonable degree of medical certainty and based upon a preponderance of the evidence, it is my opinion that the condition of degenerative arthritis of the left knee, i.e. chondromalacia is not a direct and causal result of the injury of 4/8/02. The claimant's injury occurred on 4/6/02 [sic], the surgery was performed on 6/5/02. It is my opinion that the changes noted at the time of surgery could not have developed in this short period of time.
 {¶ 17} 7. On November 7, 2003, claimant again underwent left knee arthroscopy. The surgical procedure was performed by Louis Keppler, M.D.
 {¶ 18} 8. Dr. Keppler's November 7, 2003 operative report states:
OPERATION: Arthroscopy of the left knee, extensive lysis of adhesions, and chondroplasty of medial femoral condyle and trochlear groove.
ANESTHESIA: General.
PREOPERATIVE DIAGNOSIS: Patellofemoral arthrosis. Arthrofibrosis, left knee.
POSTOPERATIVE DIAGNOSIS: Patellofemoral arthrosis. Arthrofibrosis, left knee.
OPERATIVE INDICATIONS: The patient has had a previous arthroscopy of his knee. He complains primarily of tightness and pain in his patellofemoral joint area, with pain radiating to the anterior infrapatellar region of the knee.
OPERATIVE FINDINGS: At the time of arthroscopy, we noted that [illegible] placing our instruments into the knee initially, there was marked resistance and we were unable to get into the suprapatellar pouch. He had a scar that started at the anterior cruciate ligament and extended all the way anteriorly to the patellar tendon. The suprapatellar pouch was markedly contracted. There were chondromalaci[a] changes of the patellofemoral joint, as well as the most lateral aspect of the medial femoral condyle. The medial meniscus showed signs of a previous medial meniscectomy. The remaining periphery of the meniscus was sound. The cruciate ligaments were intact. The lateral joint was sound.
We did an extensive excision of the arthrofibrosis. We then performed a suprapatellar release, taking [illegible] electro-coagulation device and releasing the tight adhesions circumferentially about the patella. This decompressed the patellofemoral articulation significantly. We now had complete mobility about the knee. The articular surfaces were free of any adhesions, and the patella was mobile.
 {¶ 19} 9. Relator preauthorized the November 7, 2003 surgery. However, the record before this court fails to disclose when relator authorized the surgery and fails to disclose any documentation regarding the authorization procedure.
 {¶ 20} 10. Relator also voluntarily restarted the payments of TTD compensation effective the date of the November 7, 2003 surgery.
 {¶ 21} 11. On January 16, 2004, after reviewing Dr. Keppler's November 7, 2003 operative report, Dr. Kaffen wrote: "It is my opinion, based on the history and physical examination and review of the medical records including the operative report of 11/7/03, that the claimant's temporary total disability was due to the non-allowed condition of degenerative arthritis of the left knee."
 {¶ 22} 12. On January 28, 2004, relator moved to terminate TTD compensation and for a declaration of an overpayment retroactive to the date of surgery, i.e., November 7, 2003. In support, relator submitted Dr. Kaffen's reports of October 17, 2003 and January 16, 2004, and the November 7, 2003 operative report.
 {¶ 23} 13. Following a February 24, 2004 hearing, a district hearing officer ("DHO") issued an order denying relator's motion. The DHO's order states:
The Hearing Officer finds that temporary total compensation is properly being paid for the allowed conditions of this claim. The surgery of 11/07/2003 was, in part, to release scar tissue built up from the first surgery of 06/05/2002. The Self-Insured employer authorized the surgery. After surgery, it would deem to flow that temporary total disability would follow. Temporary total compensation is to continue upon appropriate medical documentation.
This order is based on the operative report of Dr. Keppler.
 {¶ 24} 14. Relator administratively appealed the DHO's order of February 26, 2004.
 {¶ 25} 15. Following a March 31, 2004 hearing, a staff hearing officer ("SHO") issued an order affirming the DHO's order. The SHO's order states:
The Hearing Officer finds that temporary total compensation is properly being paid for the allowed conditions of this claim.
The Self-Insured employer authorized the surgery of 11/03 [sic]. After surgery, temporary total disability would follow. Temporary total compensation is to continue upon appropriate medical documentation.
This order is based on the operative report of Dr. Keppler.
The employer argued the reports of Dr. Kaffen who opined that the claimant's medial meniscus is resolved and that the period of disability is related to the non-allowed condition of arthritis.
This is not found persuasive based upon the reports of Dr. Keppler and the 11/07/03 operative report.
 {¶ 26} 16. On April 28, 2004, another SHO mailed an order refusing relator's administrative appeal.
 {¶ 27} 17. On September 27, 2004, relator, SBC/Ameritech, filed this mandamus action.
Conclusions of Law:
 {¶ 28} It is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 29} Relator preauthorized the November 7, 2003 surgery and voluntarily restarted TTD compensation effective the date of surgery. Following the surgery, relator had Dr. Kaffen review the November 7, 2003 operative report. Based on the operative report, Dr. Kaffen opined that claimant's TTD resulting from the surgery was due to the surgical treatment of nonallowed conditions. Citing Dr. Kaffen's report, relator then moved for termination of TTD compensation and a declaration of an overpayment for the entire amount of TTD compensation paid because of the surgery.
 {¶ 30} Relator cannot separate its failure to contest the surgery from its post-surgical challenge to the TTD compensation that it voluntarily started.
 {¶ 31} In this action, relator fails to submit any documentation to the record regarding claimant's request for authorization of the November 7, 2003 surgery or relator's actual authorization of the surgery. Apparently, relator preauthorized the November 7, 2003 surgery without seriously questioning it.
 {¶ 32} Presumably, at the time relator received the request for authorization of surgery, it had the June 5, 2002 operative report of Dr. Chapman which Dr. Kaffen reviewed in his October 17, 2003 report. We do not know from the record whether relator preauthorized the surgery before or after it received Dr. Kaffen's report. In any event, Dr. Kaffen opines that the degenerative arthritis in the left knee, i.e., chondromalacia, is not a result of the industrial injury.
 {¶ 33} Presumably, based upon the June 5, 2002 operative report, relator had some basis to question the request for authorization of surgery. It failed to do so and instead preauthorized the surgery.
 {¶ 34} With authorized surgery, there is an expected recovery period during which the claimant would be entitled to TTD compensation. No one here disputes that the November 7, 2003 surgery necessitated a period of recovery that precludes a return to work. In fact, relator voluntarily restarted TTD compensation thus indicating that it agreed that the surgery would necessitate a period of recovery preventing a return to work.
 {¶ 35} Clearly, under the circumstances here, relator had an adequate administrative remedy that it failed to exercise. Having failed to contest the surgical request, relator cannot thereafter claim that the resulting recovery period is unrelated to the industrial injury.
 {¶ 36} The failure to exercise an adequate administrative remedy bars this mandamus action. State ex rel. Harshaw Chemical Co. v. Zimpher
(1985), 18 Ohio St.3d 166; State ex rel. Stafford v. Indus. Comm.
(1989), 47 Ohio St.3d 76; State ex rel. Reeves v. Indus. Comm. (1990),53 Ohio St.3d 212.
 {¶ 37} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.