DECISION
{¶ 1} Relator, Ranco North America, has filed an original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order awarding permanent total disability ("PTD") Respondents. compensation to respondent-claimant, Thomas J. Powers ("claimant"), and to issue a new order denying said compensation.
 {¶ 2} This matter was referred to a court-appointed magistrate pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, recommending that this court deny relator's requested writ. (Attached as Appendix A.)
 {¶ 3} Relator has filed objections to the magistrate's decision. In those objections, relator argues that the commission erred in relying upon facts, statistics and data regarding claimant's non-medical vocational factors that were not supported by evidence in the record, and that the magistrate erred in finding that the commission's corrected order did not constitute an abuse of discretion.
 {¶ 4} Regarding the commission's non-medical analysis, relator takes issue with the commission's findings: (1) that claimant, at age 59, is only six years away from the typical retirement age of 65; (2) that employers are less likely to hire older workers, especially those with no prior experience in performing sedentary work; and (3) that older workers are, in general, more difficult to retrain than younger workers. Relator maintains that the findings are in conflict with those of a vocational expert, William T. Darling, who concluded that, although claimant's work history would be a negative factor, claimant's age and educational background would be positive factors in returning to a workplace environment.
 {¶ 5} The magistrate determined that the commission was not required to rely upon the expert opinion of record (Darling) in determining the impact of the non-medical factors upon claimant's injury; rather, the commission was entitled to rely upon information provided in the record and to apply its own expertise to that information. We agree.
 {¶ 6} At the outset, it is well-settled that the commission is "a vocational evaluator with considerable expertise[.]" Stateex rel. Scaggs v. Indus. Comm., Franklin App. No. 02AP-799, 2003-Ohio-1786, at ¶ 8. As the ultimate evaluator of disability, the commission "may reject the conclusion of a rehabilitation report and draw its own conclusion from the same nonmedical information." State ex rel. Ewart v. Indus. Comm. (1996),76 Ohio St.3d 139, 141. In this respect, the Ohio Supreme Court has recognized that the freedom to independently evaluate non-medical factors is important because those factors are "subject to different interpretation." Id.
 {¶ 7} In addition to the commission's ability to evaluate matters within its expertise, we find that the commission does not abuse its discretion by noting matters of common knowledge (e.g., that age 65 is the typical retirement age), and that its application of such knowledge to evidence in the record is not, as suggested by relator, tantamount to making unsupported assumptions. Further, it was within the commission's prerogative, based upon the record evidence in this case, to determine that claimant's age was a negative factor. State ex rel. Ellis v.McGraw Edison, Co. (1993), 66 Ohio St.3d 92, 94. Similarly, the commission was acting within its discretion in finding that claimant's lack of a high school degree or GED was a negative factor when considering his ability to find work within his physical restrictions, and that claimant's work history did not provide him with experience for sedentary work. Accordingly, as found by the magistrate, the commission did not abuse its discretion in analyzing the non-medical factors.
 {¶ 8} We also find unpersuasive relator's contention that the magistrate erred in concluding that the commission's "corrected order" was adequate to support a determination that claimant was incapable of performing any sustained remunerative employment. Relator contends that the corrected order: (1) failed to reference the earlier order; (2) nowhere suggested that the earlier order was incorporated by reference; and (3) failed to identify what was being corrected.
 {¶ 9} In the present case, a review of the initial order of the commission's staff hearing officer ("SHO") indicates that the SHO, while concluding that "claimant is incapable of performing any sustained remunerative employment," inadvertently stated, at the end of that order, that claimant's application for PTD was "denied." The subsequent order (captioned "CORRECTED ORDER") corrected this error, stating that claimant's "application for permanent and total disability compensation is granted." Further, while the subsequent order does not specifically cite the date of the earlier order, it notes that such "order is corrected to the following extent."
 {¶ 10} The Ohio Supreme Court has observed that "[t]he continuing jurisdiction of the commission to modify or change former findings or orders emanates from R.C. 4123.52[.]" Stateex rel. Baker Material Handling Corp. v. Indus. Comm. (1994),69 Ohio St.3d 202, 207. The Supreme Court "has construed R.C.4123.52 as authorizing such a modification upon a showing of (1) new and changed conditions subsequent to the initial order, (2) fraud, or (3) clerical error." Id. Upon review of the record in the instant case, we agree with the magistrate that the commission retained jurisdiction to issue the order correcting its own clerical error, and that the commission was not required to repeat those portions of the initial order not being corrected in order to comply with the requirements of State ex rel. Nollv. Indus. Comm. (1991), 57 Ohio St.3d 203.
 {¶ 11} After an examination of the magistrate's decision, as well as an independent review of the evidence, we overrule relator's objections to the magistrate's decision, finding that the magistrate sufficiently discussed and determined the issues raised by relator. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein, and deny relator's request for a writ of mandamus.
Objections overruled; writ denied.
Klatt, P.J., and Petree, J., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT State ex rel. Ranco North America, : Relator, : v. : No. 05AP-290 Industrial Commission of Ohio : (REGULAR CALENDAR) and Thomas J. Powers, : Respondents. :
 MAGISTRATE'S DECISION Rendered on November 30, 2005 Vorys, Sater, Seymour and Pease LLP, Theodore P. Mattis andBethany R. Thomas, for relator.
Jim Petro, Attorney General, and Sandra E. Pinkerton, for respondent Industrial Commission of Ohio.
Philip J. Fulton Law Office, and William A. Thorman, III,
for respondent Thomas J. Powers.
 IN MANDAMUS {¶ 12} In this original action, relator, Ranco North America, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order awarding permanent total disability ("PTD") compensation to respondent Thomas J. Powers, and to enter an order denying said compensation.
Findings of Fact:
 {¶ 13} 1. On January 3, 2000, Thomas J. Powers ("claimant") sustained an industrial injury while employed as a press operator for relator, a self-insured employer under Ohio's workers' compensation laws. The industrial claim is allowed for "lumbo-sacral sprain, herniated nucleus pulposus L4-L5," and is assigned claim number 00-345353.
 {¶ 14} 2. On April 29, 2004, claimant filed an application for PTD compensation. Under the "Education" section of the application, claimant indicated that the 11th grade was the highest grade of school he had completed and this occurred in 1966. Claimant also indicated that he had not received a certificate for passing the general educational development (GED) test. He did, however, receive mechanical training while serving in the United States Army.
 {¶ 15} 3. The application form posed three questions to the applicant: (1) "Can you read?" (2) "Can you write?" (3) "Can you do basic math?" Given a choice of "yes," "no," and "not well," claimant selected the "yes" response to all three queries.
 {¶ 16} 4. The application form also requests information about the applicant's work history. On the application, claimant indicated that he was employed as a "press operator" at a factory from 1966 to 2000.
 {¶ 17} 5. In support of his application, claimant submitted a report dated March 26, 2004, from Gerald T. French, M.D., stating: "In my opinion within a reasonable degree of medical certainty, Mr. Powers is permanently and totally disabled as a result of his injury."
 {¶ 18} 6. On June 4, 2004, at relator's request, claimant was examined by Gerald S. Steiman, M.D. In his report dated June 8, 2004, Dr. Steiman stated:
When considering the allowed conditions within Claim 00-345353 Mr. Powers' history, medical record review, physical examination and pain assessment provide credible evidence he will never return to his former position of employment. He is, however, able to perform a light job description. * * *
 {¶ 19} 7. On July 6, 2004, at the commission's request, claimant was examined by William Reynolds, M.D. In his narrative report, Dr. Reynolds wrote:
In my opinion at this point, this injured worker has reached a level of maximum medical improvement with regard to the specific allowed conditions.
Using the AMA Guides, 4th Edition, he qualifies as a DRE Category III. This would give him a permanent partial impair-ment of function of a man as a whole in the range of 10%.
 {¶ 20} 8. On a physical strength rating form, dated July 6, 2004, Dr. Reynolds indicated that the industrial injury medically precludes all but sedentary work.
 {¶ 21} 9. Relator submitted a vocational report dated September 14, 2004, from William T. Darling, Ph.D., a vocational expert. The Darling report states:
AGE/EDUCATION/WORK HISTORY
Thomas Powers was born on February 11, 1945 and is currently fifty-nine (59) years of age. * * *
Thomas Powers was a long-term employee of Ranco, Inc. On his PTD application, Mr. Powers indicated he worked as Press Operator from 1966 to 2000. * * *
Mr. Powers indicated that he received education through the 11th grade, having last attended school in 1966. He did not graduate from high school and did not receive his GED. He did receive some advanced training in mechanics while in the [A]rmy. He does retain the ability to read, write and perform basic math.
VOCATIONAL ANALYSIS
Based on documentation reviewed, and for the purpose of this vocational report, I assumed Mr. Powers to be capable of and restricted to work that falls with[in] the Sedentary and Light exertion levels. * * *
In order to identify job options for this claimant based up on [sic] his work history, I conducted a Transferable Skills Analysis (TSA). The basis of the TSA was the claimant's proven work history and assumed physical restrictions. The options identified would use the same or similar materials, products, subject matter and services as those demonstrated in previous work. This list included, but was not limited to: mold maker;assembler; machine operator; die polisher; assembler, smallproducts; final assembler; laminator. * * *
Throughout Mr. Powers' work history he has also demonstrated temperaments that would be a benefit to him in his attempt to search for re-employment. His temperaments include the ability to perform precise work to close tolerances and making judgments and decisions.
* * *
GENERAL INFORMATION AND SUMMARY
The claimant's age of fifty-nine (59) should not preclude employment. At this age, however, he would likely require a period of adjustment to new jobs and new work environments.
It would be my contention that the claimant's educational level would not be a barrier to re-employment. He received education through the 11th grade and retains the ability to read, write and perform basic math. His education level should be sufficient for entry-level unskilled and semi-skilled employment tasks.
The claimant's work history would be a negative [factor] when considering reemployment efforts. Again, he would benefit from a period of adjustment to a new work environment.
In conclusion, occupational options have been identified for which this claimant would be advised to apply and meet the following criteria:
1. They utilize transferable skills and/or related employment skills, or basic known vocational capabilities, per vocational analysis.
2. They are within the claimant's assumed physical restrictions, per review of his medical documentation.
3. They are likely to exist within the claimant's labor market. Some have been recently advertised in the local newspaper or in job search databases.
As such, it would be the [sic] my contention that someone of Thomas Powers' vocational and industrial injury profile, if so motivated, and with utilization of appropriate rehabilitation services, should be considered capable of working. As such, I would not consider him to be permanently and totally disabled.
(Emphasis sic.)
 {¶ 22} 10. Following an October 27, 2004 hearing, a staff hearing officer ("SHO") issued an order mailed January 12, 2005, stating:
After full consideration of the issue it is the order of the Staff Hearing Officer that the Application filed 04/29/2004, for Permanent and Total Disability Compensation, is granted to the following extent:
Permanent and total disability compensation is hereby awarded from 03/26/2004 and to continue without suspension unless future facts or circumstances should warrant the stopping of the award; and that payment be made pursuant to Ohio Revised Code Section4123.58(A).
The claimant is 59 years old. He completed eleventh grade and has not obtained a GED; however, he went to a vocational school for mechanical training and received more such training while in the U.S. Army.
The claimant's work history began in 1966 when he worked as a jeep and tank mechanic for two (2) years. From 1968 to 2000, the claimant worked as a Press Set-up Operator for the instant employer. He was required to use dies which weighed up to 4000 pounds. He moved the dies with an electric cart, but had to maneuver the dies into place by hand. Each die produced weighed approximately 45 pounds. The claimant completed 150 pans per shift.
The claimant supports his application with a report from his treating physician, Gerald T. French, M.D., dated 03/26/2004. Dr. French [stated] that "within a reasonable degree of medical certainty, Mr. Powers is permanently and totally disabled as a result of his injury."
William Reynolds, M.D., examined the claimant on 07/06/2004. Although he only estimated the claimant to have a 10% permanent impairment, Dr. Reynolds concluded that the claimant was only capable of performing sedentary work. He notes that the claimant indicated that he was "seeing a doctor who wanted to do further surgery, but this was declined because of heart problems."
It is found that at the age of 59, the claimant is only six (6) years away from the typical retirement age of 65. His age is deemed a negative factor in finding employment for the reasons that (1) employers are less likely to hire older workers, (2) especially those who have no prior experience in performing sedentary work; and (3) older workers are generally more difficult to retrain than younger ones.
The claimant's completion of eleven years of education is found to be a negative factor when considering his ability to find work within his physical restrictions. Although eleven years of schooling was sufficient to qualify him to repair vehicles for the Army and work as a set-up operator for thirty-two years, a high school education is often a prerequisite for sedentary work that is in the office/business community.
Most importantly, the claimant's work history provides him with no prior experience with sedentary work. He has not developed any work skills that would transfer to sedentary employment. He has not sought new employment for more than thirty-five years, so he is unfamiliar with the job seeking/interviewing process. He has no prior experience in dealing with the public. The claimant's prior work history is found to be a negative factor when considering his ability to obtain sedentary work.
Based upon the foregoing, it is found that the claimant is incapable of performing any sustained remunerative employment; therefore, his application for permanent and total disability compensation is denied [sic].
 {¶ 23} 11. On February 5, 2005, the same SHO mailed a "Corrected Order" stating:
After full consideration of the issue it is the order of the Staff Hearing Officer that the Application filed 04/29/2004, for Permanent and Total Disability Compensation, be granted to the following extent:
Permanent and total disability compensation is hereby awarded from 03/26/2004 and to continue without suspension unless future facts or circumstances should warrant the stopping of the award; and that payment be made pursuant to Ohio Revised Code Section4123.58(A).
After full consideration of the issue it is the order of the Staff Hearing Officer that the Application filed 04/29/2004, for Permanent and Total Disability Compensation, is granted to the following extent[:]
It is the order of the Staff Hearing Officer that this order is corrected to the following extent.
Based on the foregoing, it is found that the claimant is incapable of performing any sustained remunerative employment; therefore, his application for permanent and total disability compensation is granted.
 {¶ 24} 12. On March 24, 2005, relator, Ranco North America, filed this mandamus action.
Conclusions of Law:
 {¶ 25} Two issues are presented: (1) whether the commission must rely upon expert opinion of record when determining the impact of the nonmedical factors upon the industrial injury; and (2) whether the commission's corrected order constitutes an abuse of discretion.
 {¶ 26} The magistrates finds: (1) the commission need not rely upon expert opinion of record when determining the impact of the nonmedical factors upon the industrial injury; and (2) the commission's corrected order does not constitute an abuse of discretion.
 {¶ 27} Turning to the first issue, in State ex rel. Jacksonv. Indus. Comm. (1997), 79 Ohio St.3d 266, 270-271, the court states:
* * * [T]he commission's charge is to review the evidence of the claimant's age, education, work history, and other relevant nonmedical characteristics and to decide for itself from that evidence whether the claimant is realistically foreclosed from sustained remunerative employment. The commission may credit offered vocational evidence, but expert opinion is not critical or even necessary, because the commission is the expert on this issue. Thus, in State ex rel. Singleton v. Indus. Comm. (1994),71 Ohio St.3d 117, 118, * * * another case in which the commission rejected the sole vocational report in the record, we explained:
"Claimant's challenge rests on the erroneous belief that the commission was bound by [the vocational expert's assessment of claimant's claim for permanent and total disability]. Part of the commission's authority to weigh and evaluate evidence, however, is the freedom to reject it as unpersuasive. Particularly as to vocational assessments, `[t]o bind the commission to a rehabilitation report's conclusion makes the rehabilitation division, not the commission, the ultimate evaluator of disability, contrary to [State ex rel. Stephenson v. Indus.Comm. (1987), 31 Ohio St.3d 167].' State ex rel. Ellis v.McGraw Edison Co. (1993), 66 Ohio St.3d 92, 94 * * *."
(Emphasis sic.)
 {¶ 28} The SHO's order of October 27, 2004, discloses that the commission did not rely upon the Darling vocational report which is the only vocational report of record. Apparently, the commission, in large part, obtained information from claimant's PTD application and rendered its own analysis of that nonmedical information. This was within the commission's prerogative to do. The commission was not required to rely upon the Darling report simply because it was the only expert opinion of record. Nor was the commission required to explain why it decided to not rely upon the Darling report.
 {¶ 29} Here, relator claims that there is no evidence of record to support the commission's conclusion that the nonmedical factors preclude sustained remunerative employment. The magistrate disagrees.
 {¶ 30} The commission cited to the evidence upon which it relied. That evidence was not expert opinion, but was, for the most part, undisputed information provided from the PTD application. The commission applied its own expertise to that information and, in its order, adequately explained how it reached its conclusion that claimant is incapable of sustained remunerative employment.
 {¶ 31} Turning to the second issue, a reading of the SHO's order of October 27, 2004 (mailed January 12, 2005), leads to the conclusion that the last word of the order, i.e., "denied," is inconsistent with the remainder of the order. It is clear that the author of the order could not have intended to say in the very last sentence that the application is denied. Clearly, the word "denied," as found in the very last sentence of the order, is an error subject to commission correction.
 {¶ 32} The commission retains continuing jurisdiction over its orders to correct clerical errors. See State ex rel.Schirtzinger v. Mihm (1998), 81 Ohio St.3d 459. The SHO retained continuing jurisdiction to correct the error in the last sentence of the order mailed January 12, 2005.
 {¶ 33} Here, relator argues that the corrected order mailed February 5, 2005, constitutes an abuse of discretion because the order itself fails to meet the requirements of State ex rel.Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203, in explaining how the medical evidence and nonmedical factors preclude sustained remunerative employment. Relator's argument lacks merit.
 {¶ 34} There was no need for the corrected order to repeat those portions of the earlier order that were not being corrected. And while the corrected order mailed February 5, 2005, is arguably not the best example of how to correct a prior order, it is clear from the corrected order what is being corrected in the prior order.
 {¶ 35} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.